634 F.2d 50
 FINBERG, Beatrice, Individually, and on behalf of all others
similarly situated, Demcher, Beverly, Dzubak, John
and Dzubak, Patricia, Individually and
on behalf of all others
similarly situated,
v.
SULLIVAN, Joseph A., Individually and in his capacity as
Sheriff, Philadelphia County, and Cortese, Americo V.,
Individually, and in his capacity as Prothonotary, Court of
Common Pleas, Philadelphia County, and Sterling Consumer
Discount Company, a corporation.
Appeal of Beatrice FINBERG, on behalf of herself and others
similarly situated, Appellant.
 No. 79-1129.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 15, 1979.
Reargued En Banc April 28, 1980.
Decided Oct. 27, 1980.
 
 Bruce Fox (argued), Henry J. Sommer (argued), Community Legal Services, Inc. Philadelphia, Pa., for appellant.
 Sheldon L. Albert, City Sol., James M. Penny, Jr., Ralph J. Teti, Asst. City Sols. (argued), City of Philadelphia Law Dept., Philadelphia, Pa., for appellee Joseph A. Sullivan.
 Jonathan Vipond, III, Kathleen M. Quinn, Howland W. Abramson, Philadelphia, Pa. (argued), for appellee Americo V. Cortese.
 Argued Nov. 15, 1979.
 Before SEITZ, Chief Judge, ALDISERT, Circuit Judge, and TEITELBAUM, District Judge.*
 Argued En Banc April 28, 1980.
 Before SEITZ, Chief Judge, and ALDISERT, ADAMS, GIBBONS, ROSENN, WEIS, GARTH, HIGGINBOTHAM, and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 The appellant sought to have declared unconstitutional the application of Pennsylvania's postjudgment garnishment procedures to freeze her bank accounts pursuant to an attempt to garnish them. On cross-motions for summary judgment, the district court found the procedures valid and denied the requested declaratory relief.
 
 I. Facts
 
 2
 The appellant, Mrs. Beatrice Finberg, is a 68-year-old widow whose sole source of income is social security retirement benefits. In May of 1977, Sterling Consumer Discount Co. (Sterling) sued her in Pennsylvania's Court of Common Pleas for Philadelphia County to enforce a debt. Mrs. Finberg's response to the suit was to write Sterling telling of her dependence on social security and offering monthly payments as a settlement. She never filed an answer to Sterling's complaint.
 
 
 3
 On October 25, 1977, Sterling obtained a default judgment and immediately moved to execute on it by initiating a garnishment of the checking and savings accounts that Mrs. Finberg maintained at Philadelphia National Bank (PNB). The two accounts held a total of $550, all of which she had received as social security benefits.
 
 
 4
 The initiation of the garnishment proceeded in accordance with Pennsylvania's rules. Sterling filed a praecipe for a writ of execution with the Prothonotary of Philadelphia County, Americo V. Cortese. Cortese issued a writ that named Mrs. Finberg as defendant and PNB as garnishee. He transmitted the writ to Joseph A. Sullivan, Sheriff of Philadelphia County, who served it on PNB. This service had the effect of enjoining the bank from paying out any money from the accounts. The next day, PNB mailed Mrs. Finberg a copy of the writ, and a letter informing her of the attachment of her accounts. See Pa.R.Civ.P. 3103, 3108(d), 3111, 3140(a).[1]
 
 
 5
 The money in these accounts was entirely exempt from attachment and garnishment. The Social Security Act provides an exemption for moneys paid as benefits. 42 U.S.C. § 407 (1976). See Philpott v. Essex County Welfare Board, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (exemption protects benefits held in checking and savings accounts). In addition, Pennsylvania law grants a general $300 exemption to a class of debtors which includes Mrs. Finberg. Pa.Stat.Ann. tit. 12, § 2161 (Purdon 1967), revised and codified at 42 Pa.Cons.Stat.Ann. § 8123 (Purdon 1979).
 
 
 6
 However, Mrs. Finberg encountered some difficulties in obtaining a release of her bank accounts from attachment. Prior to the attachment, she received no notice of the garnishment action and had no opportunity to assert her exemption claims. After the attachment, no participant in the garnishment action informed her that her accounts might be exempt from garnishment or of the procedures available for obtaining a release of her exempt property. Pennsylvania law required none of these measures.
 
 
 7
 On November 18, 1977, Mrs. Finberg filed a petition in the Court of Common Pleas, under Pa.R.Civ.P. 3121(d), to set aside the writ of execution on grounds of the exemption. On December 8, twenty days after the petition was filed, a common pleas judge released $300 from the accounts pursuant to the Pennsylvania exemption. The judge kept the attachment in effect for the remaining $250 so that Sterling's attorney could take Mrs. Finberg's deposition to determine the basis of her claim of an exemption under the Social Security Act. See Pa.R.Civ.P. 209. This deposition was taken on April 11, 1978, and Sterling agreed to the release of the remaining money on that date. The Court of Common Pleas ordered the release of this money on April 25, over five months after the filing of the petition, and PNB released the money on May 30.
 
 II. District Court Proceedings
 
 8
 During the pendency of the state court garnishment proceeding, Mrs. Finberg initiated the present lawsuit in federal court to challenge the constitutionality of Pennsylvania's postjudgment garnishment procedures. Her complaint asserts causes of action under 42 U.S.C. § 1983 (1976) and names as defendants Sterling, Sheriff Joseph A. Sullivan, and Prothonotary Americo V. Cortese.
 
 
 9
 Following the release of most of her money, Mrs. Finberg amended her complaint to focus her constitutional challenge on the attachment and freezing of her bank accounts during the pendency of the garnishment action. Pa.R.Civ.P. 3111(b, c). The complaint asserted two grounds of constitutional invalidity. First, it alleged that the imposition of the freeze without sufficient procedural safeguards for exempt property was a violation of due process. Second, it alleged that the attachment of accounts containing social security benefits is inconsistent with the Social Security Act exemption and hence invalid under the supremacy clause of article six of the Constitution.[2]
 
 
 10
 For relief, the complaint prayed for declarations that Pennsylvania's postjudgment garnishment procedures are unconstitutional under the due process clause and the supremacy clause. On these claims, Mrs. Finberg sought relief for herself and for two classes of similarly situated plaintiffs. She made a timely motion for certification of these classes under Fed.R.Civ.P. 23(b)(2).
 
 
 11
 The defendants never answered the complaint but moved for summary judgment on all of the claims against them. Mrs. Finberg responded with her own motion for summary judgment. After considering these motions and the record that had been compiled, the district court entered an order disposing of all of the outstanding issues. Finberg v. Sullivan, 461 F.Supp. 253 (E.D.Pa.1978). The court found that Pennsylvania's postjudgment garnishment procedures contain sufficient protection for the judgment debtor to satisfy the due process clause and to avoid conflict with the Social Security Act exemption. Accordingly, it granted summary judgment for the defendants on the declaratory judgment claims. As for the motion for class certification, which had been pending for more than nine months, the court concluded that its denial of relief on the merits left no purpose for certification. It therefore denied the motion.
 
 
 12
 Mrs. Finberg filed the present appeal.[3] She asserts errors in the denial on the merits of the declaratory judgment claims and in the denial of the class certification motion. Two of the defendants, the prothonotary and the sheriff, have appeared as appellees to support the district court's rulings. Sterling has not appeared as an appellee.
 
 III. Jurisdictional Issues
 
 13
 Because the district court's grants of summary judgment concluded its proceedings, we have jurisdiction to hear the appeal under 28 U.S.C. § 1291 (1976). In our deliberations, we have encountered two questions concerning the justiciability of the declaratory judgment claims against the prothonotary and the sheriff. The first is whether the prothonotary and the sheriff are properly named as defendants. The second is whether the controversy in this case has become moot.
 
 A. Proper Defendants
 
 14
 A suggestion was made at oral argument that the prothonotary and the sheriff are not the proper state officials to name as defendants. Arguably, other state officials would have defended the constitutionality of the postjudgment garnishment procedures more vigorously. Our function, of course, is not to determine the most suitable defendants but to decide whether the complaint has named defendants who meet the prerequisites to adjudication in a federal court.
 
 
 15
 In Ex Parte Young, 209 U.S. 123, 157, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908), the seminal decision on suits to restrain the enforcement of laws alleged to be unconstitutional, the Supreme Court held that a particular official was properly named as a defendant if the official "by virtue of his office has some connection with the enforcement of the act." So long as such a connection existed, the Court held, the suit to restrain enforcement could be characterized as a suit against the official personally and not as a suit against the state. The bar of the eleventh amendment was thereby avoided. Id. at 150-56, 28 S.Ct. at 450-452.
 
 
 16
 Ex Parte Young also explained the nature of the necessary connection. The state official sued in Ex Parte Young was the attorney general, and he had a sufficient "connection" with the enforcement of the challenged law, which set maximum rates for railroads, in his responsibility for bringing civil enforcement actions against violators. Id. at 157-61, 28 S.Ct. at 452-454. The Court reasoned that these responsibilities made him personally a party to the controversy over the law's enforcement because his bringing of a civil enforcement action against a violator would, if the rate law was unconstitutional, constitute an actionable wrong or trespass to the violator's legal rights. Id. at 153-56, 28 S.Ct. at 451-452. The Court cited for contrast an earlier case, Fitts v. McGhee, 172 U.S. 516, 529-30, 19 S.Ct. 269, 274, 43 L.Ed. 535 (1899), where it did not allow a suit against state officials who had no responsibilities to take any personal actions to enforce or execute a law alleged to be unconstitutional and who consequently could commit no actionable wrong against the plaintiffs in connection with the law. See 209 U.S. at 156-58, 28 S.Ct. at 452-453.
 
 
 17
 In the present case, the duties of the prothonotary and the sheriff in connection with the postjudgment garnishment procedures consist of issuing the writ of execution and serving it on the garnishee. Pa.R.Civ.P. 3103, 3108. Their performance of these duties had the same effect on the plaintiff's rights that the Supreme Court found critical in Ex Parte Young. Their actions were the immediate causes of the attachment and freezing of Mrs. Finberg's bank accounts. If the rules that they were executing are unconstitutional, their actions caused an injury to her legal rights. On the basis of the reasoning employed in Ex Parte Young, we find that they are parties to her dispute over the constitutionality of these rules and properly named as defendants in her suit.
 
 
 18
 This conclusion is not altered by the fact that the duties of the prothonotary and the sheriff are entirely ministerial. Under Ex Parte Young the inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights. We note that courts often have allowed suits to enjoin the performance of ministerial duties in connection with allegedly unconstitutional laws. See, e. g., Powell v. McCormack, 395 U.S. 486, 494, 89 S.Ct. 1944, 1949, 23 L.Ed.2d 491 (1969); Ackies v. Purdy, 322 F.Supp. 38, 40 (S.D.Fla.1970); Rodriguez v. Swank, 318 F.Supp. 289, 297 (N.D.Ill.1970) (three-judge court), aff'd mem., 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971).
 
 
 19
 Nor do we retreat from this conclusion on any notion that these defendants have an insufficient interest in the constitutionality of the rules to be adverse to Mrs. Finberg. Once the prothonotary and the sheriff have relied on the authority conferred by the Pennsylvania procedures to work an injury to the plaintiff, they may not disclaim interest in the constitutionality of these procedures. That course of action would be inconsistent with their obligations to respect the constitutional rights of citizens. See Mattis v. Schnarr, 502 F.2d 588, 595-96 (8th Cir. 1974). In fact, the prothonotary and the sheriff have displayed no lack of interest in defending the constitutionality of the rules. They presented a successful defense in the district court and have continued a vigorous defense in this court.
 
 
 20
 If then the prothonotary and the sheriff are properly named as defendants, the suggestion that other officials should have been named is significant only if these other officials are necessary parties to the dispute. Fed.R.Civ.P. 19(a). Although the issue of necessary parties is not strictly jurisdictional, an appellate court should consider, on its own motion, any plausible argument that the interest of an absent party requires that party's joinder. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968).
 
 
 21
 The only other Pennsylvania officials who might be said to have an interest in this constitutional challenge to Pennsylvania's postjudgment garnishment rules are the officials who promulgated them, the justices of the Pennsylvania Supreme Court. We find that their joinder is not necessary, even if it would be feasible. It is not necessary to afford complete relief among those already parties. Fed.R.Civ.P. 19(a)(1). A declaration that the prothonotary and the sheriff violated Mrs. Finberg's constitutional rights would afford all of the relief that she sought at the beginning of this lawsuit: the undoing of the process that led to the attachment and freezing of her bank accounts. She requested no relief that required the involvement of the justices. Compare Ricci v. State Board of Law Examiners, 569 F.2d 782 (3d Cir. 1978) (per curiam) (Supreme Court of Pennsylvania was a necessary and indispensable party to a suit challenging a denial of admission to the state bar because a Supreme Court ruling was necessary for admission). Failure to join the justices also will not prejudice their interest in the case. Fed.R.Civ.P. 19(a)(2). Their interest is essentially the same as that of the present defendants, which is a defense of the constitutionality of the rules. From our observation of the progress of the case, we are satisfied that the prothonotary and the sheriff have performed adequately in presenting a defense. See Welsch v. Likins, 550 F.2d 1122, 1130-31 (8th Cir. 1977).
 
 
 22
 We conclude that the district court correctly proceeded with the prothonotary and sheriff as the only state officials named as defendants.
 
 B. Mootness
 
 23
 Having concluded that a justiciable controversy existed between the parties at the time of the attachment of Mrs. Finberg's bank accounts, we must decide whether the controversy became moot when she recovered all of the money that had been attached. This event removed Mrs. Finberg's immediate personal stake in a declaration of the unconstitutionality of the application of the garnishment procedures. A finding of mootness normally would follow.
 
 
 24
 However, mootness is not the result in cases challenging "short term orders, capable of repetition, yet evading review." Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). To avoid mootness on this ground, a complaining party must demonstrate a "reasonable expectation" that he will be subject to a recurrence of the activity that he challenges. Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam). He also must show that the activity is "by its very nature" short in duration, "so that it could not, or probably would not, be able to be adjudicated while fully 'live.' " Dow Chemical Co. v. EPA, 605 F.2d 673, 678 n.12 (3d Cir. 1979).
 
 
 25
 In the present case, Mrs. Finberg does have some reason to fear that she will suffer another attachment of her bank accounts. She remains a judgment debtor. As the record indicates that she is an elderly widow with a modest income, this judgment could remain unsatisfied for some time. Future efforts to execute the judgment are therefore likely. Sterling might repeat its attempt to garnish the accounts. For example, when new funds accumulate in the accounts, Sterling might find that the garnishment process is the most efficient way of determining whether any of the new funds are exempt. We also cannot disregard the possibility that a successor to Sterling's interest, such as a collection agency, could make such an attempt.
 
 
 26
 Furthermore, Mrs. Finberg's modest income and the difficulties that she has demonstrated in this case in meeting the demands of a creditor indicate that she may incur another money judgment and suffer an attempted garnishment to execute it. This possibility is similar to that found adequate in SEC v. Sloan, 436 U.S. 103, 109-10, 98 S.Ct. 1702, 1707-1708, 56 L.Ed.2d 148 (1978). In Sloan, the Court found that a securities issuer's history of violations of SEC and stock exchange rules raised a "reasonable expectation" of future violations and hence of future SEC orders to suspend trading in the issuer's securities.
 
 
 27
 Considering all of the foregoing facts, the possibility of a future attachment of Mrs. Finberg's bank accounts is not overwhelming, but it is not insubstantial. We conclude that she has enough of an expectation of a recurrence to satisfy this part of the test.
 
 
 28
 Mrs. Finberg also can show that any recurrence probably would evade review in this court. Any lawsuit challenging the constitutionality of the attachment would require, at the very least, one year to proceed from the filing of a complaint in the district court to the entry of judgment in this court. The attachment probably would end within that time with the occurrence of either of two events: the release of the accounts from attachment pursuant to claims of exemption, as occurred here, or the entry of a final judgment in the state court garnishment action. Pa.R.Civ.P. 3146-3148. Neither event should take as long as one year to occur because the issues and procedures in a garnishment are relatively simple. See generally Pa.R.Civ.P. 3117-3123, 3140-3148. An exceptional instance of a long and protracted garnishment is most unlikely, given the small amounts of money that Mrs. Finberg reasonably might accumulate in her bank account. In the present case, for example, the process reached completion within six months.
 
 
 29
 We conclude that the attachment of Mrs. Finberg's bank accounts during an attempt to garnish them was short-term activity "capable of repetition, yet evading review." Her claims for declarations that the procedures employed in this activity violate the due process and supremacy clauses of the constitution, therefore, are not moot. Although the supremacy clause claim arises under the Constitution, it involves consideration of a state and a federal statute to determine if they conflict rather than interpretation of a substantive provision of the Constitution such as the due process clause. Therefore we normally would consider the supremacy clause claim first because, if dispositive, it would obviate the need to decide the substantive constitutional question. See Hagans v. Lavine, 415 U.S. 528, 549, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577 (1974). However, the supremacy clause claim cannot be dispositive here because Mrs. Finberg claims due process violations for funds exempt under Pennsylvania law in addition to those exempt under the Social Security Act. Because of the breadth of the due process claim, we have chosen to address it at the outset.
 
 IV. Due Process
 
 30
 Mrs. Finberg's first declaratory judgment claim asserted that the attachment and freezing of her bank accounts deprived her of property without due process of law. No one disputes that Mrs. Finberg had a property interest in her bank accounts that required some measure of protection under the due process clause. The issue in dispute is whether the applicable rules of procedure afforded her sufficient protection.
 
 A. Analytical Background
 
 31
 (1) Supreme Court precedent
 
 
 32
 The Supreme Court addressed a similar issue over fifty years ago in Endicott-Johnson Corp. v. Encyclopedia Press, Inc., 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924). There the Court held that due process did not require notice and an opportunity to be heard before the issuance of a writ to garnish a judgment debtor's wages. The Court reasoned that the judgment debtor, who "has had his day in court" in the action on the merits must "take notice of what will follow." Id. at 288, 45 S.Ct. at 62. However, the Court did not consider the possibility that the garnishment might deprive the judgment debtor of exempt property, which is critical to this case.
 
 
 33
 Moreover, a series of more recent decisions by the Supreme Court adopts a different line of reasoning. These decisions concern a creditor's use of process to seize or attach a debtor's property. They differ from the present case in that the creditor had not yet reduced its claim of indebtedness to judgment when it brought about the seizure. However, an examination of these cases will reveal that they govern the issue now before us, despite this distinction.
 
 
 34
 The first two decisions of this series established that a debtor's interest in the continued possession and use of property must receive strong protection against the creditor's use of process, in particular notice and an opportunity to be heard before a prejudgment seizure. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), held unconstitutional a prejudgment garnishment procedure which allowed a creditor to freeze the wages of a debtor in the hands of an employer pending the outcome of the action on the creditor's claim of indebtedness. The Court ruled that due process required notice and an opportunity to be heard before imposition of the freeze. It announced a similar holding in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), which involved procedures allowing a creditor to replevy goods in which he held a security interest before a final adjudication of the debtor's default or of the creditor's right to repossess the goods.
 
 
 35
 The Court subsequently explained that notice and hearing prior to attachment are not absolutely necessary. Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), was, like Fuentes, a review of a prejudgment seizure of goods subject to a security interest. The procedures reviewed in Mitchell required no notice and opportunity to be heard prior to seizure but afforded a number of other procedural safeguards to the debtor. These included the requirement of a sworn affidavit showing the creditor's claim and right to repossession, issuance of a writ authorizing seizure by a judge rather than by a court clerk, the requirement that the creditor post a bond that would be used to compensate a debtor for damages caused by a wrongful seizure, and most important, notice and an opportunity for a hearing and dissolution of the writ "immediately" after the seizure. Id. at 605-06, 94 S.Ct. at 1899.
 
 
 36
 The Court held that these procedures satisfied the requirements of due process. It explained that the state has a legitimate interest in enabling the creditor to enforce his security interest in the debtor's property. The absence of notice and a hearing prior to a seizure serves the creditor's interest by preventing the debtor from concealing, transferring, or wasting the property. Id. at 608-09, 94 S.Ct. at 1900. At the same time, the harm that a wrongful seizure might cause was minimized by the provision for notice and hearing immediately after the seizure, and the risk of wrongful seizures in the first instance was minimized by the other procedures. Id. at 610, 94 S.Ct. at 1901. The Court concluded that with these procedures "the State has reached a constitutional accommodation of the respective interests" of the creditor and the debtor. Id.
 
 
 37
 In the final decision of this series, North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the Court made clear that it would not find a "constitutional accommodation" unless procedures afford substantial protection to a debtor's interest in continued use of property. This decision invalidated a prejudgment garnishment procedure that allowed the freezing of a corporation's bank account without either notice and a hearing before the freeze or alternative safeguards similar to those in Mitchell v. W. T. Grant Co. See also Jonnet v. Dollar Savings Bank, 530 F.2d 1123, 1128-30 (3d Cir. 1976).
 
 
 38
 The case before us now presents the same interests that the Supreme Court sought to accommodate in the four prejudgment seizure cases. The attachment of property held by a garnishee is, like a prejudgment seizure, a provisional measure serving the judgment creditor's interests by preventing transfer or concealment of the property before the creditor can execute a final seizure. The attachment affects the debtor's interest by depriving her of the continued use of her property.
 
 
 39
 The fact that in this case the creditor has obtained a judgment on its claim of indebtedness does not alter this basic similarity. Sterling's judgment represents only an adjudication of Mrs. Finberg's liability on a monetary debt, not a transfer to Sterling of title to any particular item of her property. Sterling could obtain a final adjudication of its right to seize her bank accounts only with the completion of the garnishment process. A debtor might still defeat that right with any of a number of defenses not adjudicated in the action on the merits, such as in the present case with a claim of exemption. Thus, the attachment remains a provisional measure, and the debtor retains a protectable interest in the use of her property during the pendency of the creditor's action.
 
 
 40
 We conclude that the four prejudgment seizure cases control the due process issue before us now. In relying on these cases, we take the same approach to a postjudgment garnishment case that the United States Court of Appeals for the Fifth Circuit took in Brown v. Liberty Loan Corp., 539 F.2d 1355, 1365 (5th Cir. 1976), cert. denied, 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977). See also Betts v. Tom, 431 F.Supp. 1369, 1374 (D.Haw.1977).
 
 
 41
 The principles established in the controlling Supreme Court decisions, to summarize, are that notice and an opportunity to be heard before an attachment are not absolutely necessary. However, the available procedures must afford the debtor adequate protection against erroneous or arbitrary seizures. The procedural protection is adequate if it represents a fair accommodation of the respective interests of creditor and debtor. Thus, before turning to a review of the Pennsylvania procedures, we must examine these interests.
 
 
 42
 (2) Competing interests
 
 
 43
 The relevant interests, as noted, are the creditor's interest in enforcement of the judgment debt and the debtor's interest in continued use and possession of her property. The weight to be accorded these interests depends upon the facts of a particular case.
 
 
 44
 The fact that the creditor has obtained a judgment establishing the monetary liability of the debtor gives it a strong interest in a prompt and inexpensive satisfaction of the debt. The creditor has the right to seek recovery from the debtor or the debtor's property. Additional delay and expense can diminish the value of its ultimate recovery.
 
 
 45
 Another distinctive fact of this case is the type of property seized: the bank accounts of an individual. The ability to seize monetary assets advances the creditor's interests because an execution on such assets generally is faster and less expensive than a levy and judicial sale of nonmonetary assets.
 
 
 46
 However, the debtor's interests also assume greater weight in a seizure of an individual's bank accounts. A bank account may well contain the money that a person needs for food, shelter, health care, and other basic requirements of life. Many people have no other immediate sources of money. Additional income from a future paycheck, welfare benefit, or other source may not be available for two weeks or more, and that income may be insufficient to meet the person's immediate needs. When we consider the additional fact that the money in the accounts may, as here, be covered by exemptions designed to protect a debtor's means of purchasing basic necessities, the debtor's interest in access to a bank account becomes very compelling.
 
 
 47
 In determining whether the debtor's protection under the Pennsylvania rules represents a proper accommodation of these interests, we must consider "the probable value, if any, of additional or substitute procedural safeguards" and the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).
 
 B. Review of the Pennsylvania Procedures
 
 48
 The Pennsylvania postjudgment garnishment procedures do not provide for notice and an opportunity to be heard before attachment of bank accounts. Mrs. Finberg concedes that due process does not require these procedures, since their absence serves the creditor's interest in preventing a waste or concealment of assets. See Mitchell v. W. T. Grant Co., 416 U.S. 600, 608-09, 94 S.Ct. 1895, 1900, 40 L.Ed.2d 406 (1974). She contends, however, that the procedures are inadequate because they do not contain certain measures for the protection of property subject to her exemptions: an opportunity for a hearing and adjudication of claims of exemption promptly after the attachment, adequate postseizure notice to the judgment debtor, a creditor's affidavit stating that the writ of execution will not cause the attachment of exempt property, issuance of a writ only by a judicial officer, and a bond posted by the creditor for use in compensating the debtor for an attachment of exempt property.
 
 
 49
 (1) Prompt postseizure hearing
 
 
 50
 A fundamental requirement of due process is an opportunity to be heard "at a meaningful time." Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). When the opportunity is deferred until after a provisional seizure of property, it must not be unnecessarily deferred much beyond that time. See Barry v. Barchi, 443 U.S. 55, 66, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979).
 
 
 51
 In the circumstances of the present case, the debtor's interests demand an especially prompt hearing. Her purpose in asserting exemptions is to regain money required for the basic expenditures of living. The creditor, on the other hand, has an interest in delaying a hearing and adjudication on claims of exemptions only to the extent that delay is necessary to prepare a response to the debtor's claims. At the very minimum, then, a judgment debtor in Mrs. Finberg's position must have an opportunity to assert and adjudicate claims of exemption promptly after the imposition of a freeze.
 
 
 52
 The appellees argue that a prompt hearing and adjudication is available on a petition to the Court of Common Pleas under Pa.R.Civ.P. 3121(d). This rule allows the court to "set aside the writ, service or levy ... (2) Upon a showing of exemption or immunity of property from execution." Proceedings on a rule 3121(d) petition are governed by general rules of motion practice, which are Pa.R.Civ.P. 206-209 and also Philadelphia General Civil Rule 140 for Philadelphia County. Misco International Chemicals, Inc. v. Spritz, 5 Pa. D.& C.3d 779, 782-83 (Phil.Cty.C.P.1977); Hollinger v. Penn Harris Real Estate, Inc., 39 Pa. D.&C.2d 201, 205-06, 84 Dauph. 378 (1966). We find that the rules governing motion practice fail to provide a sufficient measure of promptness.
 
 
 53
 Under the Philadelphia rule, the creditor may take fifteen days to respond to a petition before the debtor may request a ruling from the court. Philadelphia General Civil Rule 140(B)(4). Even if the court then gives an immediate ruling, fifteen days is too long a period to deprive a person of money needed for food, shelter, health care, and other basic needs. The creditor has little need for this much time in preparing a response, since complicated issues seldom arise concerning the Pennsylvania $300 exemption, the Social Security Act exemption, and other exemptions designed to protect funds for basic necessities.
 
 
 54
 An exception to the fifteen-day rule is available for a "petition of an emergency nature." Id. 140(H).[4] However, nothing in the local rules, published court decisions, or the record of this case indicates the likelihood of a judgment debtor obtaining an exception for a rule 3121(d) petition. Nor does any authority indicate the probable length of the response period for any exception. With this much uncertainty, we cannot accept this provision as providing the necessary promptness.
 
 
 55
 Even after the period allowed for the creditor to respond, further delay is likely before the court rules on the debtor's petition. If the creditor demands proof on any of the allegations in the debtor's petition, which it may do by simply asserting a lack of knowledge, Pa.R.Civ.P. 1029(c), the parties must proceed to take depositions on disputed issues of fact. Id. 209(a). The motions court has no authority to dispense with the deposition process when a petition and response raise disputed issues of fact. Instapak Corp. v. S. Weisbrod Lamp & Shade Co., 248 Pa.Super. 176, 374 A.2d 1376 (1977). The rules impose no time limits on the deposition process, and it is not by nature swift. See generally Pa.R.Civ.P. 4007.1, 4007.3. Therefore, when the creditor demands proof on claims of exemption, the rules provide absolutely no assurance of a prompt ruling on a rule 3121(d) petition.
 
 
 56
 The district court held that a debtor can obtain a prompt release of exempt property from an attachment with a request to the sheriff under Pa.R.Civ.P. 3123. The rule is quoted in the margin.[5] The district court read it to mean that the sheriff, upon receipt of a verified affidavit, must "promptly" order the release of exempt funds to the use of the debtor. 461 F.Supp. at 262.
 
 
 57
 We do not read rule 3123 to apply to a judgment debtor in Mrs. Finberg's position. A fair reading of the rule indicates that it applies to property held by the sheriff in preparation for a judicial sale. In a garnishment action against intangible property, the property stays in the hands of the garnishee until the court enters judgment against the garnishee. See Pa.R.Civ.P. 3109(a), 3111(c), 3148. The judgment then is in the form of a money judgment against the garnishee. Id. 3148(a)(1). The sheriff never holds the property in preparation for a judicial sale or for any other purpose.
 
 
 58
 We cannot find any evidence of the use of rule 3123 to claim exemptions for property held by garnishees or for executions against intangible property.[6] The parties, one of whom is the Sheriff of Philadelphia County, state that they also are unaware of such uses. Indeed, neither appellee has offered any argument in this court in support of the district court's assumption that Mrs. Finberg could have invoked this rule. We conclude that this assumption is incorrect.
 
 
 59
 Even in situations where rule 3123 applies, it does not provide for a prompt return of exempt property to the debtor. The rule imposes no time limit on the sheriff's determination of the validity of a claim of exemption. No authority that we can find requires the sheriff to return exempt property to the debtor at any time before the judicial sale. We find no basis for the district court's conclusion that rule 3123 enables a judgment debtor promptly to recover exempt property.
 
 
 60
 The only other process that might allow a judgment debtor to assert a claim of exemption is a preliminary objection to a writ of execution. Pa.R.Civ.P. 3142(a). However, proceedings on preliminary objections are subject to the same rules that govern proceedings on petitions under rule 3121(d). Pa.R.Civ.P. 1028(c); Philadelphia General Civil Rule 140(E). Hence, this process would afford no greater promptness. We conclude that the Pennsylvania postjudgment garnishment rules fail to provide the prompt postseizure hearing and adjudication of claims of exemption under the provisions of any act of Congress or under any Pennsylvania Act of Assembly that due process requires.
 
 
 61
 (2) Notice
 
 
 62
 Along with a hearing at a meaningful time, fundamental principles of due process required that Mrs. Finberg receive timely and adequate notice of the attempt to garnish her accounts. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The Pennsylvania rules provide: "Upon being served with the writ (of execution), the garnishee shall forward a copy to the defendant." Pa.R.Civ.P. 3140(a). The rules also require the garnishee to forward to the debtor a copy of its answers to any interrogatories of the creditor. Id. 3140(b).[7] Mrs. Finberg asserts two deficiencies in these procedures.
 
 
 63
 Her first contention is that notice in the foregoing manner might not reach the debtor. She argues that the rules do not contain sufficient safeguards against a garnishee's failure to forward copies of the writ and answers to interrogatories.[8] However, in the present case, the garnishee fully complied with the rules and gave Mrs. Finberg notice in the prescribed manner. The issue of this alleged constitutional defect, therefore, is not presented by the facts of this case. Accordingly, we shall refrain from considering the issue. See United States v. Rains, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).
 
 
 64
 The second defect that Mrs. Finberg alleges is that the notice prescribed by the rules, and received by her, did not inform her of exemptions that might apply to her property and of the process for claiming exemptions. The district court rejected this contention "since due process simply does not require that the state inform individuals of their legal rights." 461 F.Supp. at 263.
 
 
 65
 The notice required by due process must be "reasonably calculated, under all the circumstances, to ... afford (interested parties) an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The Supreme Court held in Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 13-15, 98 S.Ct. 1554, 1562-1563, 56 L.Ed.2d 30 (1978), that a public utility's notice to customers that it was terminating gas and electric services failed to satisfy due process because the notices did not inform the customers of the process for contesting terminations. According to the Court, what due process requires for the content of the notice depends upon the circumstances of the particular case. Id. at 14 n.15, 98 S.Ct. at 1563.
 
 
 66
 In this case, Mrs. Finberg was not informed of either the exemption for social security benefits, or the $300 exemption under Pennsylvania law. As we noted earlier, both of these exemptions are designed to protect a debtor's means of purchasing basic necessities. In a case involving an attempt to garnish an individual debtor's bank accounts, notice that informs the debtor of the exemption under federal law for social security benefits, of the existence of the $300 exemption under Pennsylvania law, and of the procedure for claiming these exemptions would provide substantial protection to the debtor's interest in having funds available for basic necessities. Knowledge of these exemptions is not widespread, and a judgment debtor may not be able to consult a lawyer before the freeze on a bank account begins to cause serious hardships. These problems are probably most acute for those judgment debtors who have few immediate sources of necessary funds other than money held in a bank account. Notice of these matters can prevent serious, undue hardship for the judgment debtor whose lack of information otherwise would cause delay or neglect in filing a claim of exemption. Because Mrs. Finberg did not claim other exemptions under Pennsylvania law, we need not determine the effect of our decision on Pennsylvania exemptions not claimed by Mrs. Finberg.
 
 
 67
 The conveyance of this information would not place a great burden on the state. For example, the information might be provided on the copy of the writ of execution which the garnishee is required to promptly forward to the defendant. See Pa.R.Civ.P. 3140(a). The creditor would not have to incur any additional expense or delay. We hold that the failure to provide Mrs. Finberg with this information was a violation of due process.
 
 
 68
 (3) Preliminary affidavit, bond, and judicial issuance
 
 
 69
 The requirements of notice and an opportunity to be heard on claims of exemptions after the imposition of a freeze, as just discussed, serve to minimize the hardship caused the debtor by an attempt to garnish exempt funds. Mrs. Finberg argues that due process requires a number of additional procedures that arguably would reduce the number of such garnishments in the first instance.
 
 
 70
 The first of these procedures is a requirement that the judgment creditor file, along with the praecipe for a writ of execution, an affidavit stating that the writ would not cause the attachment of exempt funds. Mrs. Finberg next contends that two additional procedures are necessary to reduce the number of wrongful garnishments: the posting of a bond to compensate the judgment debtor for injury caused by attachment of exempt property and the requirement that a judge or magistrate issue a writ of execution.
 
 
 71
 We have considered these contentions and conclude that although the requirements might be desirable, we do not believe their absence constitutes a violation of due process. See Brown v. Liberty Loan Corp., 539 F.2d at 1369.
 
 V. Supremacy Clause
 
 72
 Mrs. Finberg's second declaratory judgment claim asserted that the Pennsylvania postjudgment garnishment rules conflict with the Social Security Act exemption. She prayed for a declaration that the procedures are invalid under the supremacy clause of article six of the Constitution.
 
 
 73
 A state law is in conflict with a federal statute, and void under the supremacy clause, if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Accord, Jones v. Rath Packing Co., 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977). This test requires us to examine first the purposes of the federal law and second the effect of the operation of the state law on these purposes. See Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).
 
 
 74
 The Social Security Act exemption provides that benefits "shall not be subject to execution, levy, attachment, garnishment, or other legal process." 42 U.S.C. § 407 (1976). The overall objective of the social security system is "the protection of its beneficiaries from some of the hardships of existence." United States v. Silk, 331 U.S. 704, 711, 67 S.Ct. 1463, 1467, 91 L.Ed. 1757 (1947). The exemption of benefits from legal process has the apparent purpose of furthering this objective by ensuring that a beneficiary has uninterrupted use of moneys received as benefits.
 
 
 75
 The immediate effect of Pennsylvania's current postjudgment garnishment procedures is to provide a judgment creditor with a means of violating the exemption. Social security beneficiaries commonly hold their benefits in bank accounts. Yet, the Pennsylvania procedures make available a process for attaching and freezing bank accounts without regard to whether they contain social security funds.
 
 
 76
 Even though the procedures have this effect, they might still avoid interference with congressional purposes if they operate in a manner that avoids any significant interruption of access to benefits. However, as our discussion in the previous section illustrates, they do not operate to avoid such consequences. The absence of a prompt hearing on claims of exemption means that a judgment debtor could be denied access to social security benefits for a long time. The inadequate notice procedures raise a danger of a permanent loss of benefits. For a judgment debtor who depends upon social security to meet the necessary expenditures of living, these consequences can be severe.
 
 
 77
 Thus, the net effect of Pennsylvania's postjudgment garnishment procedures is to bring about precisely the consequences that Congress sought to prevent. It follows that they stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, supra.
 
 
 78
 The district court sought to avoid this conclusion with a special reading of the Pennsylvania procedures. The court presumed that the draftsmen of the rules did not intend that they be used to attach and freeze Social Security benefits. It then concluded that such use of the procedures was a violation of Pennsylvania law, "so that one who proceeds with such a garnishment will be liable for the return of the unlawfully seized, federally exempt funds." 461 F.Supp. at 258.
 
 
 79
 We need not determine the correctness of the district court's reading of Pennsylvania law because we find that even under this reading the postjudgment garnishment procedures would still operate to frustrate congressional purposes. A creditor already must return social security benefits that have been attached; the mechanism is a petition to set aside the writ of execution under Pa.R.Civ.P. 3121(d). The addition of a formal prohibition of the attachment of benefits and "liability" for their return would add no greater sanction against this use of the garnishment procedures. The creditor would have no reason to take any greater care to avoid the attachment of bank accounts that contain social security benefits than he would take without these measures. The measures contemplated by the district court would be no more than formal and ineffective barriers to interference with congressional purposes.
 
 
 80
 We conclude that the Pennsylvania procedures conflict with the social security exemption and are invalid under the supremacy clause.VI. Class Certification
 
 
 81
 Mrs. Finberg filed a timely motion to certify a plaintiff class and subclass for the declaratory judgment claims. The district court took no immediate action on the motion but left it pending for nine months. Eventually the court found that the declaratory judgment claims lacked merit. Having reached this conclusion, it reasoned that "class certification would serve no purpose" and denied the motion. 461 F.Supp. at 257.[9]
 
 
 82
 We note that our vacating of the summary judgment orders on the declaratory judgment claims removes the premise for the district court's denial of class certification. However, we believe the merits of the plaintiffs' substantive claims to be an impermissible basis for deciding this issue.
 
 
 83
 It is not correct to say that the district court's ruling on the merits of the declaratory judgment claims deprived certification of any purpose. In general, the certification of a class does not depend upon whether the substantive claims have any merit. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); Kahan v. Rosenstiel, 424 F.2d 161, 169 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). Certification in suits for injunctive or declaratory relief under rule 23(b)(2) serves an important purpose that is not obviated by rulings against the named plaintiffs on the substantive claims. Because a risk of mootness often is present in these cases, certification ensures that the claims of unnamed plaintiffs will receive full appellate review. If the claims of the named plaintiffs become moot, the appellate court might still find that the claims of unnamed class members present live controversies. Sosna v. Iowa, 419 U.S. 393, 398-402, 95 S.Ct. 553, 556-558, 42 L.Ed.2d 532 (1975). The Supreme Court recognized the importance of this function of rule 23(b)(2) certification when it stated that the district court should "heed strictly" the requirement of a prompt ruling on a certification when mootness may develop. Swisher v. Brady, 438 U.S. 204, 213-14 n.11, 98 S.Ct. 2699, 2705-2706, 57 L.Ed.2d 705 (1978).
 
 
 84
 We hold that the district court's rulings on the plaintiffs' substantive claims did not constitute a valid basis for denial of class certification. We will vacate the denial of class certification.
 
 VII. Conclusion
 
 85
 The orders of the district court granting summary judgment for defendants on each of the declaratory judgment claims and denying class certification will be vacated. The case will be remanded to the district court for disposition consistent with this opinion.
 
 
 86
 ALDISERT, Circuit Judge, dissenting.
 
 
 87
 My disagreement with the majority is fundamental and all pervasive. We are divided not so much over the choice, interpretation, or application of legal precepts as by a primary difference in our understanding of federalism. My views of Pennsylvania Common Pleas Court practice are nadiral to those of the majority; our disagreement, irreconcilable. Yet because we are intimately absorbed in "our natural law inheritance in constitutional adjudication,"[1] our debate must be spirited and robust. Only if it is will the common law adjudicatory tradition be truly respected and, by a percolating process, a tried and tested gloss added to the constitutional precepts of case and controversy and due process.
 
 
 88
 My dissent covers a wide range. I doubt whether true adversaries are before this court to address a constitutional issue so pregnant with debtor-creditor relationships; I defend the thesis that Mrs. Finberg's claim is now moot and that the only live issue before us is the question of class certification; I argue that certifying a class in this case may have been theoretically proper although practically inconsequential. Most important, however, my understanding of traditional Pennsylvania Common Pleas Court practice and the Pennsylvania Rules of Civil Procedure, tempered by fourteen years' experience as a Pennsylvania state court practitioner and eight years as a Pennsylvania Common Pleas Court judge, is diametrically opposed to the majority's. At every decision point presented by this complex case, this court is sharply divided.
 
 I.
 
 89
 Although not central to the disposition of the case, the absence of a creditor-litigant illustrates the lack of sufficiently adverse parties to present most persuasively each opposing viewpoint. This court has acceded to theoretical notions of debtors' rights conjured up by the debtors' institutional advocate, the Community Legal Services, Inc., without hearing one word from anyone representing creditors. The absence of vigorous adversaries in this constitutional attack on the attachment execution procedures promulgated by the highest court of a state should counsel this court to abide the teachings of the Supreme Court, which has described the requirement of actual adversaries as "a safeguard essential to the integrity of the judicial process, and one which we have held to be indispensable to adjudication of constitutional questions by this Court." United States v. Johnson, 319 U.S. 302, 305, 63 S.Ct. 1075, 1076, 87 L.Ed. 1413 (1943) (per curiam) (citations omitted).
 
 
 90
 The status of the sheriff and prothonotary of Philadelphia County as "proper parties to this action" does not, as the majority suggest, rectify the absence of actual adversaries. There is a basic difference between the presence of proper parties to confer federal subject matter jurisdiction and the presence of parties with sufficient interest at stake to guarantee the minimum quantum of conflict to constitute a case or controversy. The appellees before us wear the appropriate public costumes to furnish a modicum of state action, thereby becoming the vehicle by which an ordinary dispute between a debtor and creditor has been transmogrified into a federal case by virtue of 42 U.S.C. § 1983. But they are actually only actors in a Kabuki play, acting out artificial roles by gesture and speech, with everyone in the audience aware of the masquerade. Although they presented "a vigorous defense in this court," maj. op. at 54, I am not prepared to say that they have any interest in the outcome that qualifies as legally adverse to Mrs. Finberg. They are merely official stakeholders, giuridici castrati, juridical neuters, required to defend the existing Pennsylvania Procedural Rules, whether this means protecting the interest of the debtor or the creditor. The state attorney general, who is vested with responsibility for enforcing and defending state statutes, did not participate and apparently was not notified, an extreme irony in a case touching precisely the rights to notice and hearing.[2] I therefore must doubt that the appellees before the court make this controversy between creditor and debtor "definite and concrete, touching the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 463-464, 81 L.Ed. 617 (1937). Unlike the Minnesota Attorney General in Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), who had been adjudged guilty of contempt and ordered to jail until he dismissed a state mandamus proceeding, the sheriff and prothonotary in this case are mere bystanders in Mrs. Finberg's claim against Consumer Discount Company. They have presented a respectable defense before us, but that is not the constitutional test; the test is whether the parties actually have conflicting interests in the outcome.[3]
 
 
 91
 Nor do I agree with the majority's statement that the sheriff and the prothonotary "presented a successful defense in the district court." Maj. op. at 54. The record shows that the defendants lost in the court below. The district court determined that Social Security funds deposited in a bank account are immune from attachment and that Mrs. Finberg was entitled to reimbursement for the statutory garnishee's fees. The creditor defendant, Consumer Discount Company, paid this amount and did not appeal or participate in these proceedings. The only appellant before us was the winner in the court below. Therefore, no party with an interest genuinely antagonistic to the appellant is before us.
 
 II.
 
 92
 This case suffers not only from an absence of actual adversaries, but from the mootness of Mrs. Finberg's claim. A case or controversy ceases to exist when the matter has been resolved. See DeFunis v. Odegaard, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974) (per curiam); Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969); Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3, 84 S.Ct. 391, 394, 11 L.Ed.2d 347 (1964). An actual controversy must exist at every stage of the litigation, not merely at the time the complaint is filed. See, e. g., Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973). In my view, the individual action brought by Mrs. Finberg has been fully resolved and is therefore moot. The class certification issue survives that individual resolution, however, and the court may address the merits only with respect to the class.
 
 A.
 
 93
 Mrs. Finberg alleged in the district court that the Pennsylvania attachment execution procedures violated her due process rights because she was not informed of her exemption rights before her bank account was attached. She also contended that federal statutes preclude garnishment of and execution of judgment against Social Security benefits. She sought declaratory and injunctive relief under 42 U.S.C. § 1983. By the time she filed her federal action, she had already obtained relief in state court. By virtue of her Common Pleas Court case, she knew that Social Security funds deposited in a bank were exempt from state attachment execution, and the federal district court reinforced this knowledge. Because Mrs. Finberg obtained actual notice of this exemption, she, as distinguished from other debtors, needed no declaratory judgment requiring a future creditor to so advise her. If we accept the majority's thesis that mandatory notice of this exemption is an accoutrement of due process, she already has received it, and the constitution does not require any court to perform an unnecessary act.
 
 
 94
 Moreover, as a result of her lawsuit, she was made financially whole. The issue presented in her federal action then became an "abstract proposition," the resolution of which is beyond an Article III court. See California v. San Pablo & T. R. R., 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893). Her request for a declaratory judgment as well as compensation does not breathe life into the matter. Noting the difficulty in fashioning a precise test for determining whether a request for declaratory relief had become moot, the Supreme Court in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), held that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Mrs. Finberg's recovery of compensatory damages, the district court's declaration that the federal Social Security exemption must be recognized in Pennsylvania garnishment proceedings, and the actual notice she received of this exemption, taken together, dissipated her dispute. I fail to see how the controversy remains sufficiently immediate and real; it has ceased to be "definite and concrete" and no longer "touch(es) the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-241, 57 S.Ct. 461, 463-464, 81 L.Ed. 617 (1937).
 
 B.
 
 95
 The majority attempt an end run around orthodox mootness doctrine by invoking a fashionable exception to the preceding analysis, "capable of repetition, yet evading review." A proper use of this exception requires analysis of the decision in which it originated seventy years ago. In Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), the Court examined a continuing order of the Interstate Commerce Commission and short term orders modifying it. Because the orders would necessarily expire before a federal court could review them, the Supreme Court first addressed the mootness issue, stating:
 
 
 96
 The questions involved in the orders of the Interstate Commerce Commission are usually continuing (as are manifestly those in the case at bar) and their consideration ought not to be, as they might be, defeated, by short term orders, capable of repetition, yet evading review, and at one time the Government and at another time the carriers have their rights determined by the Commission without a chance of redress.
 
 
 97
 219 U.S. at 515, 31 S.Ct. at 283. The leading contemporary construction of this precept was announced by Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam), in which the Court specified two elements that must appear together to invoke the exception: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Because the respondent in Weinstein, who was challenging the parole system in North Carolina, had been paroled and then released prior to the Court's action, the Court dismissed the action as moot. Employing the two part test, it stated that "there is no demonstrated probability" that the respondent would again encounter the parole system. Id. at 149, 96 S.Ct. at 348 (my emphasis). In addition to the two elements identified in Weinstein, I suggest a third element. The appellant whose claim has been mooted in the traditional sense may not continue to press it when, as here, the lower court has effectively resolved the dispute in her favor. Because Finberg fails to satisfy the second and third elements, this court should dismiss her individual claim as moot.
 
 1.
 
 98
 The majority argue that attachment execution actions are by their nature of such short duration that they will rarely, if ever, persist through the course of full judicial review. Maj. op. at 58. This statement is, in my view, essentially correct. Fulfillment of this criterion, however, does not absolve appellant of the other two criteria.
 
 2.
 
 99
 The second element requires us to determine whether there is a "reasonable expectation that the same complaining party (will) be subjected to the same action again." Weinstein, 423 U.S. at 149, 96 S.Ct. at 348. As noted previously, appellant was fully satisfied in both the state and federal trial courts. The district court determined that the Pennsylvania garnishment procedure, see Pa.R.Civ.P. 3101-49, "neither contemplates nor authorizes" garnishments in violation of the federal Social Security exemption, 42 U.S.C. § 407, and that garnishment of Social Security funds under color of the Pennsylvania rules is unlawful, subjecting the creditor who conducts such a garnishment to liability for the return of the federally exempted funds. Finberg v. Sullivan, 461 F.Supp. 253, 258 (E.D.Pa.1978). My examination of the record discloses that Mrs. Finberg had no substantive defense to the execution other than her successful claim that Social Security funds were wrongfully attached. Whatever may be the case of other members of the putative class, it cannot be said that Mrs. Finberg, a successful litigant in the federal district court on the issue of Social Security funds exemption, now needs notice that these federal funds are exempt from state attachment.
 
 
 100
 The majority's treatment of Mrs. Finberg's future position is notional at best, fanciful at worst. Their account of what will befall her in the future has no foundation in the record before us. The creditors who lost in the trial courts cannot reasonably be expected to attach her bank account again. If they do, or if other creditors do, the bank stands on notice that the funds may be exempt, and it will face double liability if it pays them over. See part IV B, infra. If creditors not parties to these proceedings recover judgment against her, she now has actual notice of the exemptions and can move almost instantaneously for release of her funds. See Pa.R.Civ.P. 3142(a); part IV C 2, infra. She is in as good a position as this court can put her, and cannot be expected to endure the "same action"-attachment without notice of applicable exemptions-in the future. Although "there is always the possibility" that she will be threatened again, the mootness exemption is not concerned with mere possibilities. See Presier v. Newkirk, 422 U.S. 395, 403, 95 S.Ct. 2330, 2335, 45 L.Ed.2d 272 (1975).
 
 3.
 
 101
 Finally, Mrs. Finberg has prevailed in both courts that have previously heard her claim. The federal district court concluded that the Social Security moneys are exempt from attachment and that Mrs. Finberg was entitled to damages from Sterling to compensate her for fees deducted by the bank for its services as garnishee. She was thus made 100 per cent whole financially. Moreover, the holding in the district court that Social Security funds are exempt from garnishment is tantamount to the declaratory judgment sought by Mrs. Finberg. Her claim having been satisfied, she "has obtained everything that (she) could recover by a judgment ... in (her) favor." California v. San Pablo & T. R. R., 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893). The appeal in Mrs. Finberg's behalf should not be viewed as a continuation of the attempt to vindicate her interests. It is instead an attempt to expand the relief accorded her as precedent for all Pennsylvania, and indeed for the entire Third Judicial Circuit. When the appellant has received complete relief and the sole effect of our decision will be to expand that relief to other unnamed nonparties, I am convinced that good jurisprudence, as well as constitutional precedent, dictate dismissal of her appeal.[4]C.
 
 
 102
 Until the recent decisions in United States Parole Commission v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), and Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), I would have held that the entire case is moot. But appellant, as a putative class representative, has also appealed the denial of class certification. Like Finberg, the appellants in Roper had been made whole at or after trial, but the Court held that notwithstanding the mooting of their individual claims, their representative claims were alive. Geraghty made clear both the extent and the limitations of its holding:
 
 
 103
 (A)n action brought on behalf of a class does not become moot upon the expiration of the named plaintiff's substantive claim, even though the class certification has been denied. The proposed representative retains a "personal stake" in obtaining class certification sufficient to assure that Art. III values are not undermined. If the appeal results in reversal of the class certification denial, and a class subsequently is properly certified, the merits of the class claim then may be adjudicated pursuant to the holding in Sosna (v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975)).
 
 
 104
 445 U.S. at 404, 100 S.Ct. at 1212 (footnote omitted). On the basis of these new directions, I would hold that the class action issue is not mooted and that Mrs. Finberg's representative claim is properly before us. I would go further and hold that on the basis of this record, the district court erred in not certifying a class of all Social Security recipients in Philadelphia County. I would conclude that the requirements of both Fed.R.Civ.P. 23(a) and 23(b) are met and that the failure to certify a class was an abuse of discretion. I would therefore reverse the district court's determination and remand for the purpose of certifying a class. This conclusion requires me to address the substantive due process arguments advanced by Mrs. Finberg on behalf of the class.
 
 III.
 
 105
 In addressing the majority's analysis of the Pennsylvania Rules of Civil Procedure, I have grave reservations not only about the integrity of their analysis but also about the implications of their action for the federal system. The majority have committed what I believe to be fundamental errors in construing the relevant Pennsylvania rules, and in doing so they have created the possibility that this adventure into Pennsylvania law will be purposeless when the Pennsylvania courts authoritatively construe the rules and avoid the constitutional defects found by the majority.
 
 
 106
 Three considerations dictate a greater caution and deference in construing the Pennsylvania rules than has been exercised by the majority. The most important one is that the majority's interpretation of Pennsylvania law causes the attachment execution schema to run afoul of the United States Constitution. The Supreme Court has frequently counselled that federal courts should presume "that the statute will be construed in such a way as to avoid the constitutional question presented," Baggett v. Bullitt, 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964) (citations omitted); see Siler v. Louisville & Nashville R. R. Co., 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909), and that "state courts may be reluctant to attribute to their legislature an intention to pass a statute raising constitutional problems, unless such legislative intent is particularly clear," Boehning v. Indiana State Employees Assn., Inc., 423 U.S. 6, 7 n.*, 96 S.Ct. 168, 169, 46 L.Ed.2d 148 (1975) (per curiam) (citations omitted); see also Wisconsin v. Constantineau, 400 U.S. 433, 444, 91 S.Ct. 507, 513, 27 L.Ed.2d 515 (1971) (Black J., dissenting); cf. Bellotti v. Baird, 428 U.S. 132, 147-48, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976) (Supreme Judicial Court of Massachusetts, to which the district court would certify the statutory construction issue on remand, would be aided by Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976), in construing the statute within the limits of the federal constitution). Moreover, the Pennsylvania courts operate under a mandate to construe state procedural rules so as not to violate the federal or state constitutions. Pa.R.Civ.P. 128(c).
 
 
 107
 The second consideration is pragmatic. By construing the rules in violation of the fourteenth amendment, and then holding unabashedly that they violate it, the court has adjudicated a constitutional issue that may be rendered meaningless when a Pennsylvania state court interprets these same rules. Regardless of the propriety of abstaining in this case,[5] this court must recognize that its interpretation of the Pennsylvania rules is merely a prediction of what the state courts will do. See Hahn v. Atlantic Richfield Co., 625 F.2d 1095, at 1100 (3d Cir. 1980). The court's "tentative answer ... may be displaced tomorrow by a state adjudication.... The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court." Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941) (citations omitted). The majority's basic approach is at odds with sound constitutional jurisprudence.
 
 
 108
 Finally, the majority's analysis of the Pennsylvania rules may do substantial harm to federal-state comity. As demonstrated in part IV, infra, the majority not only ignore settled principles of construing state statutes and particularly those of Pennsylvania; they not only concentrate on isolated provisions of a larger state schema in construing them to violate the fourteenth amendment; they also attribute the local rules of Philadelphia County to the entire state of Pennsylvania. There is no factual basis, in this record or otherwise, to support the notion that Philadelphia County practices are followed in the other sixty-six Pennsylvania counties. At each of these junctures, the majority neglect to acknowledge the Supreme Court's teaching that "(f)ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies ...." Pullman, 312 U.S. at 500, 61 S.Ct. at 645.[6] I have grave concerns for the effect this type of decisionmaking will have on the relationship of federal and state judiciaries, and on the esteem currently enjoyed by this court.
 
 IV.
 
 109
 I reject in toto the majority's interpretation of the Pennsylvania Rules of Civil Procedure and their perception of Pennsylvania common pleas practice. Their interpretation violates that state's precepts for construing civil rules, runs specifically counter to the published interpretations prepared by the committee that drafted the rules, ignores the interpretation offered by the commentators, is totally unsupported by case law, demonstrates a lack of understanding of Pennsylvania common law practice relating to emergency relief through motion practice, and violates the orthodox admonition that a federal court should not hold a state law unconstitutional if a reasonable meaning is available to preserve the legislative intention. See Siler v. Louisville & N. R. R., 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909).
 
 
 110
 For purposes of the due process analysis I shall accept the majority's assumption that "fifteen days is too long a period to deprive a person of money needed for food, shelter, health care, and other basic needs." Maj. op. at 59. I must emphasize, however, that this assumption does not square with two uncontroverted facts. First, the $300 personal exemption has been a universally recognized exemption to execution of contract judgments in Pennsylvania since 1849. See 42 Pa.C.S.A. § 8123(a), derived from Act of April 9, 1849, P.L. 533, § 1. Indeed, Mrs. Finberg had this portion immediately set aside. Second, Mrs. Finberg's monthly Social Security check amounted to $301. Thus, even a fifteen day delay in adjudicating her Social Security exemption claim would leave her almost 100 per cent of her monthly income under the $300 exemption.[7] Moreover, because of her economic position, she is entitled to free medical care under Medicare and Medicaid and to free legal representation from the Community Legal Services.[8]
 
 A.
 
 111
 The majority's analysis of the relevant Supreme Court precedents lacks sensitivity to the different context in which this case arose. This case addresses not prejudgment attachment, but postjudgment attachment. The majority accept, as do I, the continuing viability of Endicott Johnson Corp. v. Encyclopedia Press, Inc., 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), in which the Court upheld a New York statute allowing postjudgment garnishment of wages without notice to or opportunity for hearing of the judgment debtor. The Court noted that
 
 
 112
 the established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment.
 
 
 113
 Id. at 288, 45 S.Ct. at 62. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), addressed an identical situation arising before adjudication of the debtor's liability. In my view, the one substantial difference between Endicott Johnson and Sniadach is the time of garnishment in relation to the judgment. Although the majority is correct in noting that Endicott Johnson is not controlling in this case because it did not address a debtor's ability to claim exemptions from the judgment, I cannot accept the majority's cavalier disregard of the one fact significant to the Court in reaching different results in these otherwise identical cases. Had the majority given more consideration to the creditor's possession of a valid judgment against the debtor, the balance of interests may have been sufficiently altered to warrant upholding the Pennsylvania procedures. Cf. Brown v. Liberty Loan Corp., 539 F.2d 1355, 1366 (5th Cir. 1976) ("creditor interest in enforcement of a judgment ... is patently weightier than a prejudgment creditor's interest in freezing debtor assets to insure enforcement of a judgment that may never issue."), cert. denied, 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977). My position is not that Mrs. Finberg should not have an opportunity to assert her exemption, but that the creditor's greater interest in enforcing its judgment diminishes the urgency of the process that is due her.
 
 
 114
 In applying the prejudgment seizure decisions of the Supreme Court, the majority fail to acknowledge the availability under Pennsylvania law of a hearing in which a judgment debtor may assert her exemptions. When a judgment debtor files a claim for exemptions, the trial court must allow submission of evidence appropriate to support and contest that claim. See Zeitchick Estate v. Zeitchick, 215 Pa.Super. 106, 109, 257 A.2d 371, 373 (1969). I see no problem with either the notice or hearing afforded debtors under the Pennsylvania rules, see part IV B infra, nor with the hearing provided. Therefore, I fail to comprehend the majority's invocation of the precedential authority of the four prejudgment seizure cases,[9] in which no notice or opportunity to be heard was provided, and in which the creditor's interest was of much less weight. See maj. op. at 57.
 
 
 115
 Finally, assuming that all else stated by the majority is true, the limitations of their analysis do not justify the expansiveness of their relief. The importance of a more expeditious postjudgment garnishment hearing is to afford an opportunity to assert exemptions to judgment debtors who rely solely on money in bank accounts to meet their day to day subsistence needs. I do not challenge the importance of protecting assets of such importance to particular individuals, see Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 20, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30 (1978); Goldberg v. Kelly, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Corp., 395 U.S. 337, 340, 89 S.Ct. 1820, 1822, 23 L.Ed.2d 349 (1969), but the particularlized interest of the individual in this case does not justify the wholesale invalidation of otherwise legitimate procedures used throughout the Commonwealth of Pennsylvania.
 
 
 116
 In my view, therefore, the majority have committed fundamental errors in interpreting and applying the relevant Supreme Court decisions. But my disagreement does not stop there. I dissent far more strongly from the majority's construction of Pennsylvania law, a construction apparently predicated more on a desire to invalidate the relevant rules of procedure than to construe them as would a court of that state.
 
 B.
 
 117
 As the majority note, Mrs. Finberg does not contest the failure of the Pennsylvania garnishment procedure to provide notice to the debtor before her assets are attached. Her argument centers on the post-seizure procedure. My reading of the Pennsylvania Rules of Civil Procedure indicates that a debtor receives prompt notice of the seizure and has an opportunity for a prompt post-seizure procedure in which she can assert her exemption claims.
 
 
 118
 Under rule 3140, the garnishee, in this case the bank, must promptly forward a copy of the writ of attachment to the debtor. Pa.R.Civ.P. 3140(a). The garnishee must also promptly forward a copy of its answers to interrogatories to the debtor. Pa.R.Civ.P. 3140(b). Only if the garnishee complies with both of these requirements is it absolved of its common law duty to resist the attachment. See Pa.R.Civ.P. 3141(a). Similarly, if the garnishee fails to answer the writ or the interrogatories sufficiently, it subjects itself to judgment in the amount of the creditor's claim. Pa.R.Civ.P. 3141(a) (note). Under this procedure, the garnishee can raise for the debtor the defense of exemption as new matter in its answer to the interrogatories, see Eastern Lithographing Corp. v. Silk, 203 Pa.Super. 21, 23, 198 A.2d 391, 393 (1964), or the debtor can raise the exemption herself through preliminary objections as provided by Rule 3142(a), see Zeitchick Estate v. Zeitchick, 215 Pa.Super. 106, 108, 257 A.2d 371, 372 (1969); Seaboard Industries v. Monaco, 53 Pa.D. & C.2d 321, 324-25 (1971); 3 H. Goodrich & P. Amram, Standard Pennsylvania Practice: Procedural Rules Service with Forms § 3140(b)-1, at 311-12 (1st ed. 1960) (hereinafter cited as "Goodrich-Amram"); 9 H. Goodrich & P. Amram, Standard Pennsylvania Practice: Procedural Rules Service with Forms § 3140(b): 1.1, at 461-62 (2d ed. 1977) (John E. Keefe, Jr., managing editor) (hereinafter cited as "Goodrich-Amram 2d").[10] If the exemption claim is not raised by preliminary objection, it can be raised at any other time. See Pa.R.Civ.P. 3142(c).[11]
 
 
 119
 If the garnishee fails to notify the debtor, it subjects itself to potential double liability. As the Philadelphia Court of Common Pleas stated over a hundred years ago, "(i)f from carelessness, or neglect to employ counsel, or any other cause, he pays the wrong party before the contest is judicially determined, he cannot justly complain if he is compelled to pay the right party when he has been ascertained by the judgment of the court." Paul v. Johnson, 9 Phila. 32, 34 (1871); see also Badler v. L. Gallarde Sons Co., 387 Pa. 266, 270, 127 A.2d 680, 683 (1956); Mulvihill v. Philadelphia Saving Fund Society, 117 Pa.Super. 455, 461, 177 A. 487, 489 (1935); Loose Estate, 47 Pa.D. & C.2d 407, 410-11 (Berks Cty. 1968). Rule 3141(a) strongly implies that this liability survives if the garnishee fails to notify the debtor promptly of the writ and to provide her with answers to the interrogatories. See 3 Goodrich-Amram § 3141(a)-1, at 316-17; 9 Goodrich-Amram 2d § 3141(a):1, at 467-68. If the garnishee bank acquiesces in the attachment and pays the proceeds to the creditor, and if the debtor has legitimate defenses or exemptions to assert, the bank itself will bear the loss. It therefore has a very strong incentive to notify the debtor promptly, obviating its duty to defend. The majority tacitly concede that this procedure is adequate to notify the debtor of the garnishment. I go even further and emphasize the inherent incentive placed on the garnishee to fulfill its duty of "unusual diligence and caution." Paul v. Johnson, 9 Phila. at 34.
 
 
 120
 The promptness with which the debtor is notified affords her the opportunity to be heard "at a meaningful time" if the procedure for asserting and litigating exemption claims is sufficient under due process standards. The majority argue that this "debtor's interests demand an especially prompt hearing." Maj. op. at 59. Because the Pennsylvania Rules of Civil Procedure demand prompt notice of the attachment, a debtor in Mrs. Finberg's financial situation will be able to obtain legal representation, perhaps through Community Legal Services, Inc., and then pursue the extraordinary remedies provided by Pennsylvania to meet her extraordinary situation. The majority commit a fatal error by assuming that the rules allow no flexibility to handle Mrs. Finberg's circumstances. A proper analysis of the rules indicates that sufficient flexibility does exist for a debtor, who has obtained the prompt notice outlined above, to assert and litigate her exemptions "at a meaningful time."
 
 C.
 1.
 
 121
 The majority's analysis of the procedures for claiming exemptions contradicts the basic schema of the Pennsylvania execution rules and also contradicts the respected interpretations of Philip Werner Amram and Professor A. Leo Levin, as well as the interpretation of the Pennsylvania Procedural Rules Committee, which drafted the rule for the Pennsylvania Supreme Court. The majority's interpretation of rule 3123 suggests that the Pennsylvania Supreme Court created no specific procedure for asserting a debtor's exemption in attachment execution proceedings. This view ignores the adoption by the Pennsylvania Supreme Court of a complete set of execution rules, Pa.R.Civ.P. 3101-3250, on March 30, 1960, effective November 1, 1960, under the title "Enforcement of Judgments for the Payment of Money." The new rules suspended ninety-one separate statutory provisions and formed one cohesive body of execution law. Of all the separate rules, only one, rule 3123, is specifically labelled "Debtor's Exemption."
 
 
 122
 The Pennsylvania Supreme Court did not enact state-wide procedural rules in vacuo ; it provided explicit direction for their application and construction. The rules of construction that I find particularly applicable here are Pa.R.Civ.P. 126-28. In rule 126, the court mandated liberal construction "to secure the just, speedy and inexpensive determination of every action or proceeding to which (the rules) are applicable." Rule 127(c)(6) requires courts construing a rule to consider "the consequences of a particular interpretation ...." Most important to this case, however, is rule 128(c), which states that "the Supreme Court (of Pennsylvania) does not intend to violate the Constitution of the United States or this Commonwealth ...." Because the majority ignore these binding rules of construction, they reach a result quite at odds with the result that I predict a Pennsylvania court would reach. The misconstruction in this case is far more significant than in most situations in which a federal court must predict state law. See Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1286-87 (3d Cir. 1979) (statement of Aldisert, J.). In this case, the misconstruction results in a federal declaration that an entire state procedural schema is unconstitutional.
 
 
 123
 To understand the operation of specific provisions of the Pennsylvania Rules of Civil Procedure, it is necessary to comprehend their basic schema. The chairman of the Pennsylvania Civil Procedural Rules Committee is Philip Werner Amram, a nationally and internationally distinguished scholar of civil procedure.[12] Mr. Amram states that each of the five kinds of attachment proceedings under Pennsylvania law draws its basic structure from the foreign attachment rules. 2 Goodrich-Amram § 1251-3; 4 Goodrich-Amram 2d § 1251:3. The attachment execution rules at issue here must be understood against the background of the foreign attachment rules. 2 Goodrich-Amram § 1251-1; 4 Goodrich-Amram 2d § 1251:1.
 
 
 124
 Under the foreign attachment rules, exempt property "is by definition not caught by the attachment. To turn this property over to the plaintiff is to give him something to which he is not entitled by law." 2 Goodrich-Amram § 1268(a)-1, at 152; see 4 Goodrich-Amram 2d § 1268(a):1, at 217. The garnishee retains responsibility for exempt property. A judgment debtor's failure to claim his exemption does not permit the garnishee to release exempt property to the judgment creditor. Thus, under Pennsylvania practice a debtor's exemption rights are protected and the garnishee must not release exempted funds to the plaintiff creditor without first notifying the debtor of the garnishment. See Pa.R.Civ.P. 1268(b).[13] There is significant protection provided for defendant's exemption even before he or she has notice of the attachment.
 
 
 125
 Because the garnishee remains liable for wrongful disposition of the property until a court has ordered it to relinquish the property, see 2 Goodrich-Amram § 1268(a)-1; 4 Goodrich-Amram 2d § 1268(a):1, and because the judgment debtor usually receives notice of the garnishment from the garnishee, see part IV B supra, the debtor can assert her exemptions and obtain a factual determination of their validity before the creditor acquires the property. See Zeitchick Estate, 215 Pa.Super. at 109, 257 A.2d at 373. My reading of rule 3123, in light of the rules of construction and common sense, suggests that a judgment debtor is entitled to as much latitude as necessary, limited of course by reason, to assert legitimate exemptions. A contrary reading of the rule would not only subject debtors to loss of exempted property, thereby frustrating legislative intent, but would also impose an unjust burden on garnishees, who would be liable for relinquishing exempt property without the prospect of a definitive adjudication of the exemption's merit prior to release of the property. Both results approach absurdity, and I decline to join an interpretation allowing them.
 
 2.
 
 126
 The Pennsylvania rules not only allow a hearing in which the debtor may assert exemptions. They also demand that, in the extraordinary circumstances present here, the hearing be prompt. The majority's failure to understand the procedural schema, and rule 3123[14] in particular, is the source of one of my most serious disagreements with them. They interpret rule 3123 as inapplicable to garnishment of bank accounts, reasoning that the sheriff never "holds" the bank account in preparation for a judicial sale. See maj. op. at 60-61.
 
 
 127
 The fatal flaw in the majority's analysis of rule 3123 is their assumption that the sheriff has no role in the garnishment of a bank account. That assumption is simply incorrect. In most cases of garnishment, the sheriff must deliver the garnishee summons to the garnishee. Indeed, in this case the creditor directed a writ of execution to the sheriff of Philadelphia County, requiring him "to attach the property of the defendant(s) not levied upon in the possession of: Philadelphia National Bank." Writ of Execution dated October 25, 1977, Sterling Consumer Discount Co. v. Finberg, No. 5678 (Phila. Cty., May Term, 1977). It is certainly not inconceivable that a debtor desiring to claim an exemption could approach the sheriff and have the garnishment order dissolved. Indeed, decisions handed down by Pennsylvania courts before the current rules were drafted explicitly sanction the debtor's assertion of his garnishment exemption claim to the sheriff who delivered the garnishee summons. See Bancord v. Parker, 65 Pa. 336, 337-38 (1870); Hild Floor Mach. Co. v. Rudolph, 156 Pa.Super. 102, 103, 39 A.2d 457, 458 (1944); see part IV C 4 infra.
 
 
 128
 But the majority's construction is based primarily on the absence of explicit judicial authority construing the rule. The fair and proper approach to rule 3123 in this context, or to any state statute under constitutional attack, even absent generally applicable rules of construction, is to require the challenger to demonstrate that the unconstitutional construction has some basis, rather than requiring the defender to prove a prevailing construction consistent with the Constitution.
 
 
 129
 Absent an acceptable construction proffered by the parties, however, the majority should have looked for aid beyond judicial decisions to respected commentators. A cursory examination of Goodrich-Amram's special section, "Enforcement of Judgments for the Payment of Money," reveals that Professors Levin, Shuchman, and Gorman (hereinafter referred to as Professor Levin), all eminently respected commentators, did not take the niggardly view of rule 3123 espoused by the majority. In their initial 430-page discussion of the subject, since expanded to 589 pages, not one sentence implies that this rule only "applies to property held by the sheriff in preparation for a judicial sale." Maj. op. at 60. I suggest that the majority's interpretation is so bizarre that it never occurred to the treatise writers.
 
 
 130
 The discussion notes initially that foreign attachment procedures are incorporated into the attachment execution rules. 3 Goodrich-Amram § 3123-1; 9 Goodrich-Amram 2d § 3123:1. But more important, Professor Levin's commentary does not give even the slightest indication that exemptions may be claimed under rule 3123 only for property held by the sheriff in preparation for a judicial sale. Rather, the converse is clearly apparent:
 
 
 131
 The procedure for asserting a claim of exemption differs substantially from prior practice and the difference has been noted as one of the significant contributions of the Execution Rules. Under prior practice, the debtor was under a duty "promptly to present his claim for exemption" under penalty of forfeiture. Moreover, he had at his peril to present it to the proper authority, that is, the sheriff or the court; merely asserting his claim to the garnishee had been held insufficient. The provisions of the new Rule, by contrast, are self-executing, at least when the circumstances require. Rule 3123(a) provides that "Failure of the defendant to claim his statutory exemption shall not constitute a waiver thereof," and the section immediately following creates the mechanism for implementation: if the defendant fails to claim his exemption, the sheriff must, in effect, claim it for him.
 
 
 132
 9 Goodrich-Amram 2d § 3123(a)-1, at 279-80; see also 3 Goodrich-Amram § 3123(a)-1.
 
 
 133
 The Pennsylvania Procedural Rules Committee, the group of Pennsylvania lawyers and judges who drafted the rules for the Pennsylvania Supreme Court, has expressed the view that rule 3123 covers claims for exemptions. The committee note accompanying the promulgation of the rules states:
 
 
 134
 The proceedings for claim of exemption (in Rule 3123) are simplified ....[15]
 
 
 135
 The majority also suggest that the rule imposes no time limit on the sheriff's determination of the validity of an exemption claim. "No authority that we can find requires the sheriff to return exempt property to the debtor at any time before the judicial sale." Maj. op. at 61. It is apparent to me, however, that the debtor has a right to exempt property from the outset; the creditor has no claim to exempt property. All the debtor need do is demonstrate the validity of his exemption and the property is free. That showing seldom will be complex and normally is achieved by presentation of affidavits. See Zeitchick Estate, 215 Pa.Super. at 109, 257 A.2d at 373. Forty-eight hours is the maximum time for judicial review of the sheriff's decision. 3 Goodrich-Amram § 3123(d)-1; 9 Goodrich-Amram 2d § 3123(d):1. The majority have simply erected a strawman rather than deal directly with the real issues in these proceedings.
 
 
 136
 The district court concentrated on the rule 3123 procedure, concluding:
 
 
 137
 The procedure outlined in this rule is quick and simple: the debtor asserts his claim for exemption directly to the sheriff, presumably by verified affidavit. No lengthy court procedures are required, since no adjudication of the debtor's entitlement to exemptions is made at that time. The rule simply mandates that a sheriff receiving a claim for exemption "shall set aside" the property so claimed. This he must do promptly, moreover, since his role is purely executory and not at all discretionary.
 
 
 138
 461 F.Supp. at 262. When the sheriff sets aside property in the exact amount of the exemption, exclusive possession of that property reverts to the debtor. Under Pennsylvania case law, the debtor has an absolute right to sell, return, or use it as she sees fit.[16]
 
 
 139
 Another avenue by which a judgment debtor may claim exemptions is Pa.R.Civ.P. 3121(b). The literal language of rule 3121(b)(2) suggests that the court can grant immediate relief to a debtor claiming an exemption: "(b) Execution may be stayed by the court as to all or any part of the property of the defendant upon its own motion or application of any party in interest showing ... (2) any other legal or equitable ground therefor." (my emphasis). Because a claim of exemption is a legal or equitable ground for granting relief, a debtor may seek a stay under rule 3121(b)(2). The literal language of this provision imposes no restrictions on the court. Although it is facially applicable, the majority fail to address this procedure.
 
 
 140
 Similarly, under Pa.R.Civ.P. 3121(d), "(t)he court may on application of any party in interest set aside the writ, service or levy ... (2) upon a showing of exemption." (my emphasis). A proper understanding of the operation of rule 3121(d) requires an initial realization that Pennsylvania procedural practice differs significantly from federal procedural practice. Unlike federal courts, in which there is no general federal common law, Erie R. R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Pennsylvania is one of the few states that remains, as it began as a colony in 1686, a common law jurisdiction. Neither the Pennsylvania Supreme Court nor its procedural rules committee have represented that the Pennsylvania Rules of Civil Procedure are self-contained or are designed to cover the entire civil practice before the courts. For example, the state rules describe petition practice in detail, rules 206-09, but nowhere describe motions practice. There is good reason for this: motion practice varies from county to county, and the Pennsylvania Procedural Rules Committee obviously decided that this practice was best left to local supervision.
 
 
 141
 Nevertheless, the state rules do specifically recognize a distinction between motion practice and petition practice.[17] Although the Pennsylvania rules create this important distinction, the majority fail to acknowledge it, much less comprehend it. They state: "Proceedings on a rule 3121(d) petition are governed by general rules of motion practice, which are Pa.R.Civ.P. 206-209 and also Philadelphia General Civil Rule 140 for Philadelphia County.... We find that the rules governing motion practice fail to provide a sufficient measure of promptness." Maj. op. at 59 (citations omitted) (my emphasis).
 
 
 142
 A number of misconceptions regarding Pennsylvania civil practice are obvious. First, rule 3121(d) does not refer to a petition, but to an application. Second, the use of the term application rather than petition or motion indicates that the procedure need not follow the petition procedure of Pa.R.Civ.P. 209. Other rules allow use of an application rather than petition or motion when expeditious action is necessary.[18] In the absence of a limitation on the use of applications in rule 3121(b) and (d), we may assume the application could have been made in any form necessary to ensure expeditious treatment.
 
 
 143
 It is significant that the Pennsylvania rules that can be invoked by a debtor to assert an exemption provide for an application for emergency relief. Under Pa.R.Civ.P. 3121(b)(2), the court on its own motion or application of any party in interest may grant a stay on any legal or equitable ground. Under Pa.R.Civ.P. 3121(d)(2), the court may on application of any party in interest set aside the writ, service, or levy upon a showing of immunity or exemption. The note to Pa.R.Civ.P. 3121(d) indicates that the garnishee may raise the defense of immunity or exemption on behalf of the debtor by preliminary objections under Pa.R.Civ.P. 3142(a) or in his answers to interrogatories under Pa.R.Civ.P. 3145(b).
 
 
 144
 Generally speaking, under Pennsylvania practice, a motion may be oral or in writing; it is made by an attorney and does not have to be verified. A petition under Pennsylvania practice is a written application to the court for relief containing averments of facts verified by the party. A motion can be made by counsel, orally or in writing, prior to trial, during trial, or after trial. Pennsylvania practice generally leaves to the discretion of the court whether a response should be made or whether the judge can rule on the motion immediately. This is because Pennsylvania motion practice developed in that state's pristine common law era when no formal equity channels were available.[19] Motion practice was and is Pennsylvania's method of obtaining equitable relief, because that state's formal equity jurisdiction is purely statutory.[20]
 
 
 145
 The majority are misinformed when they state that Pa.R.Civ.P. 206-09 are the general rules of motion practice. Even a superficial examination of the captions to these rules reveals that they govern petitions, not motions. In Pennsylvania practice a petition "is in the nature of a complaint or a declaration" and under the rules requires an affidavit of facts that do not appear of record. 2 Pennsylvania Standard Practice ch. 9, §§ 24, 25 (Revised 1956). By contrast, a motion is an extremely informal procedure that need not be in writing. It is made to a court or a judge, in either law or equity, for the purpose of obtaining a rule or order directing some act to be done in favor of the applicant.[21] A debtor who wants to assert an exemption is not burdened under the rules with the highly formal requirements of petition practice. She may avail herself of the much simpler and more expeditious motion or application procedures. The majority's failure to grasp these important distinctions undermines their analysis of the exemption claiming procedure, and also leaves them vulnerable to a different construction by the Pennsylvania courts.
 
 3.
 
 146
 Neither of the two common pleas court decisions relied on by the majority addresses the question of exemptions. By contrast, a series of Pennsylvania appellate court decisions do, and they demonstrate two important characteristics of the practice of claiming exemptions: its simplicity and its promptness. The majority rely on Hollinger v. Penn Harris Real Estate, Inc., 39 Pa.D. & C.2d 201, 84 Dauph. 378 (Dauphin Cty. 1966), which involved the filing of preliminary objections to a petition. The court noted that the rules make no provision for preliminary objections to petitions, but considered the arguments as if brought in the proper form, a petition raising a jurisdictional issue. Id. at 206. Hollinger does not imply that the rules of motion practice also govern petitions. Similarly, Misco International Chemicals, Inc. v. Spritz, 5 Pa.D. & C.3d 779 (Phila. Cty. 1977), dealt only with rule 1017(b)(5), which by its terms requires a petition to raise a lack of capacity to sue; although Misco does cite Phila. Local Ct. R. 140(D), rule 140(D) refers to preliminary objections, not to motions. In any event, Misco does not support the proposition for which the majority cite it.
 
 4.
 
 147
 The Pennsylvania rules do not abrogate remedies existing under common law. Beyond their confusion of petition practice and motion practice, the majority neglect a line of Pennsylvania decisions beginning in 1870 treating exemption claims, decisions cited as vital authority in 2 Goodrich-Amram § 1252-14, at 42 nn. 6 & 8; 4 Goodrich-Amram 2d § 1252:14, at 66 nn. 38 & 40. Over 100 years ago the Pennsylvania Supreme Court declared that a defendant like Mrs. Finberg, upon receiving notice of the garnishment, simply has to notify the sheriff, who serves the garnishee summons, of the claimed exemptions. No other formal procedure is required. Keller v. Bricker, 64 Pa. 379, 383 (1870). As the Pennsylvania Supreme Court stated,
 
 
 148
 (t)he sheriff in an attachment execution has nothing to do with levying the debt, he merely serves the process and warns the garnishee not to pay over. Doubtless the defendant may notify him of the claim for exemption at the time of service, of which notice the officer would be bound to make a return ....
 
 
 149
 Bancord v. Parker, 65 Pa. 336, 338 (1870); see also Hild Floor Mach. Co. v. Rudolph, 156 Pa.Super. 102, 103, 39 A.2d 457, 458 (1944). Contrary to the majority's assumption in their analysis of rule 3123, the sheriff is the proper official to receive a claim of exemption not only prior to a judicial sale, but also pursuant to garnishment of a sum of money. Pennsylvania case law, which allows great flexibility in claiming exemptions but is clear in requiring the sheriff to honor them, is dramatically different from the highly complicated procedure fashioned by the majority in this case. See 3 Goodrich-Amram § 3123(a)-1; 9 Goodrich-Amram 2d § 3123(a):1.
 
 
 150
 My review of Pennsylvania procedure indicates that the rules of statewide applicability provide a variety of mechanisms by which a debtor may assert exemptions promptly. On proof of the exemption by the debtor, a garnishee or the sheriff must relinquish the property to the debtor. When there is a controversy about the exemption, application for judicial relief under rules 3121 and 3123 or under the common law is available. To me, the law of Pennsylvania is that simple.
 
 5.
 
 151
 Moreover, I disagree with the majority's characterization of the Philadelphia County rules as rigid and inflexible. Rule 140 of the Court of Common Pleas of Philadelphia provides for emergency hearings. The rule in effect since May 3, 1976, was amended, effective June 2, 1980. Section G of the original rule would exempt an application for exemption from the usual requirement that the adverse party have fifteen days to respond.[22] The rule as amended June 2, 1980, deletes the fifteen-day response provision but substitutes a twenty-day response period. See Phila. Local Ct. R. 140(B)(1). When preliminary relief is requested, however, this period can be waived under rule 140(H) and heard immediately by the motion judge.[23]
 
 
 152
 In addition, under Pa.R.Civ.P. 248,[24] which would supersede a conflicting local rule, the court has power to extend or shorten the time prescribed by any rule, and certainly under its equitable powers the court could grant an immediate hearing when the recipient of Social Security funds that have been attached shows that they are essential for her maintenance.
 
 6.
 
 153
 The majority's apparent insistence that the rules specify a time for the court hearing on exemptions or command that the hearing occur "immediately" or "promptly" places a fetish on form that the Supreme Court has explicitly rejected in Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). In weighing the respective interests of the creditor and debtor when potential prejudice or damage to the secured creditor might occur by delay of prejudgment hearing, the Court upheld ex parte seizure by affidavit when the opportunity for hearing thereafter was promptly available. The Court had before it article 3506 of the Louisiana Code of Civil Procedure: "The defendant by contradictory motion may obtain the dissolution of a writ of attachment or of sequestration, unless the plaintiff proves the grounds upon which the writ was issued." 416 U.S. at 622, 94 S.Ct. at 1907 (appendix). The statute neither employed the magic word "promptly" nor specified a certain period for adjudicating the defendant's claim. The Court's construction of language is central to an understanding of its teaching:
 
 
 154
 The writ is obtainable on the creditor's ex parte application, without notice to the debtor or opportunity for a hearing, but the statute entitles the debtor immediately to seek dissolution of the writ, which must be ordered unless the creditor "proves the grounds upon which the writ was issued," Art. 3506, the existence of the debt, lien, and delinquency, failing which the court may order return of the property and assess damages in favor of the debtor, including attorney's fees.
 
 
 155
 416 U.S. at 606, 94 S.Ct. at 1899. (footnote omitted) (my emphasis). Thus, the mere availability of a "contradictory motion" by the defendant evoked the Court's comment that "the statute entitles the debtor immediately to seek dissolution of the writ."
 
 
 156
 I defend the thesis that a similar construction must be placed on Pennsylvania rules and practice. To rule otherwise is consciously to ignore the instruction of the Court:
 
 
 157
 The requirements of due process of law "are not technical, nor is any particular form of procedure necessary," Inland Empire Council v. Millis, 325 U.S. 697, 710, 65 S.Ct. 1316, 1323, 89 L.Ed. 1877 (1945). Due process of law guarantees "no particular form of procedure; it protects substantial rights." NLRB v. Mackay Co., 304 U.S. 333, 351, 58 S.Ct. 904, 913, 82 L.Ed. 1090 (1938). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); Stanley v. Illinois, 405 U.S. 645, 650, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). Considering the Louisiana procedure as a whole, we are convinced that the State has reached a constitutional accommodation of the respective interests of buyer and seller.
 
 
 158
 416 U.S. at 610, 94 S.Ct. at 1901. The Court's statements in Mitchell are consistent with the general precept that state statutes should, whenever possible, receive a judicial construction consistent with the Constitution.
 
 V.
 
 159
 Moreover, a glaring inconsistency appears between the majority's reasoning and their conclusion on the promptness issue. They conclude that "the Pennsylvania postjudgment garnishment rules fail to provide the prompt postseizure hearing," maj. op. at 61 (my emphasis), yet their reasoning repeatedly refers to Philadelphia County practice, see, e. g., maj. op. at 59, 61 (referring to Phila. Local Ct. R. 140(B)(4), 140(H), 140(E)). By making Philadelphia practice a touchstone of its reasoning, the majority should have limited its decision to a ruling on the Philadelphia practice. No evidence was presented in the record to establish the practices followed in the other sixty-six Pennsylvania counties.[25]
 
 VI.
 
 160
 But a more serious criticism can be lodged against the majority. Although they recognize that "complicated issues seldom arise concerning ... the Social Security Act exemption," maj. op. at 59, they state that "further delay is likely before the court rules on the debtor's petition," id. at 59-60. The majority ignore the settled substantive law of Pennsylvania deeming Social Security funds exempt from attachment. The existence of this exemption is a matter of law, not of fact. At least since 1970, it has been the uncontradicted law of Pennsylvania. My research indicates that no Pennsylvania court has ever held to the contrary. In Mellon National Bank & Trust Co. v. Cole, 118 Pitts.L.J. 298 (Allegheny Cty. 1970), Judge Price, then of the Court of Common Pleas and now of the Pennsylvania Superior Court, declared:
 
 
 161
 (T)he court is satisfied that the intent of Congress was to protect the recipient from attack by creditors before and after moneys are paid to enable her to provide for life's necessities, and that the deposit in a bank account by defendant for her use of moneys clearly identifiable as social security payments, as these funds are, by stipulation, so identified, does not expose those moneys to attachment or levy by her creditors.
 
 
 162
 Id. at 298 (citations omitted).
 
 
 163
 The other attempt of the majority to ignore substantive Pennsylvania law is their discussion of the supremacy clause issue. A straightforward analysis of this issue could have followed the majority's due process analysis, explaining that even though Pennsylvania recognizes the Social Security Act exemption, the lack of notice and a prompt post-attachment hearing did not satisfy due process. Instead, the majority elected to conclude: "We need not determine the correctness of the district court's reading of Pennsylvania law because we find that even under this reading (that Social Security funds are a recognized exemption) the postjudgment garnishment proceedings would still operate to frustrate congressional purposes." Maj. op. at 63.
 
 
 164
 At first blush, it is difficult to understand why the majority do not accept the district court's obviously correct analysis that under Pennsylvania law Social Security funds are a recognized exemption. But upon reflection, there is more than mere sophistry to the majority's approach: there was deliberate purpose. Agreement with the district court on this issue would have required the majority to concede that the district court did in fact issue a declaratory judgment in Mrs. Finberg's favor. This recognition would have been tantamount to conceding that the plaintiff's individual claim was satisfied in the district court. Coupled with the monetary judgment in her favor, the majority would be forced into the position I have taken-that Mrs. Finberg's individual claim is now mooted, although her representative claim is not. I can ascertain no other explanation for the majority's refusal to endorse the district court's proper statement of the law; under the supremacy clause, state attachment execution laws must and do respect the federal Social Security exemption.
 
 VII.
 
 165
 In addition to a lack of a prompt post-garnishment exemption claiming procedure, the majority hold that the Pennsylvania practice violates the due process clause because the judgment creditor has not supplied notice of two discrete available exemptions, the federal social security exemption and the state $300 exemption, and of the procedures for claiming them. The majority assert that provision of this information "would not place a burden on the state," and that "(t)he creditor would not have to incur any additional expense or delay." Maj. op. at 62. They suggest including it in the writ of execution, which the debtor receives from the garnishee under Pa.R.Civ.P. 3140(a). Id.
 
 
 166
 With all due respect to my distinguished colleagues, I believe that this statement demonstrates a naivete about the complicated multitude of exemptions permitted under Pennsylvania and federal law. Although the majority are unwilling to provide notice of all exemptions available under state and federal law, there is no principled reason for excluding other exemptions of equal importance in future cases. It will therefore not be unexpected for the Community Legal Services, Inc., to bring a new case in the district court alleging deprivation of due process for a creditor's failure to notify a debtor of other exemptions. Absent a principled explanation why the social security exemption and the $300 state exemption occupy a special status, the real effect of the court's holding today is that a Pennsylvania debtor ultimately must be advised of the existence of all available exemptions.
 
 
 167
 Numerous exemptions are provided by the Pennsylvania Judicial Code, 42 Pa.C.S.A. §§ 8123(a), 8124, 8127(a), set forth in the margin.[26] The Judicial Code also enumerates several exceptions to the exemptions. See id. §§ 8123(b), 8126, 8127(b). The debtor also is granted a right to treble damage relief for certain violations of these provisions. Id. § 8127(c).
 
 
 168
 Although the Judicial Code contains a long list of exemptions from execution, see note 26 supra, § 8121(a) specifically provides that they are in addition to exemptions granted by other statutes. The body of Pennsylvania exemption law is not set forth in one section of any statute, readily retrievable by creditors. Moreover, a myriad of open questions exist under Pennsylvania law regarding the duration of state exemptions after the money or proceeds are deposited in a bank account. For example, if the judgment debtor receives no-fault benefits, which are exempt from attachment by the no-fault statute, 40 P.S. § 1009.106(f), but which are not specifically set forth in the Judicial Code, and deposits them in his bank account, no Pennsylvania decision indicates whether the exemption survives the deposit. A debtor also may need to know about common law exemptions in Pennsylvania, and the creditor or a responsible county official would be charged with keeping the exemption list current by including dozens of court decisions relating to exemptions.[27]
 
 
 169
 In addition, the court today requires that the notice set forth the procedures for claiming exemptions. This requirement means that the notice must reprint the text of Pa.R.Civ.P. 3119, 3121, and 3123, and, I presume, rules 1271, 1272, and 1275, which relate to foreign attachment. A case can be made, and probably eventually will be, that a statement of the common law practice, still largely followed, also should be included.
 
 
 170
 The majority have constructed a veritable Frankenstein, a complicated procedure that far exceeds the hurt it is designed to heal and will, in the end, prove counterproductive. Given the sheer numerousness of Pennsylvania exemptions and the complexity of alternative procedures to claim them, the majority's requirement in reality departs substantially from the simple notice the Supreme Court recommended in another context. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 13-15, 98 S.Ct. 1554, 1562-1563, 56 L.Ed.2d 30 (1978). Moreover, the notice requirement has no analogue in the Federal Rules of Civil Procedure, which were promulgated by the United States Supreme Court. The brute fact is that there are so many exemptions that to set forth this information on a writ would present a mass of incomprehensible boilerplate reeking with legalese.
 
 
 171
 In requiring, as a matter of federal constitutional law, a "notice that informs the debtor of the exemption under federal law for social security benefits, of the existence of the $300 exemption under Pennsylvania law, and of the procedure for claiming these exemptions," maj. op. at 62, the majority supply neither legislative nor judicial precedent. The omission of authorities or experience was not inadvertent. My own research indicates that only one state has in place any provision similar to the draconian requirements now foisted on Pennsylvania under the guise of federal due process.[28] To require as a matter of federal constitutional law that a state adopt a procedure that has been tried, tested, and proved workable in a number of jurisdictions is one thing; to fashion and impose an untested theory is quite another. The action of my colleagues reminds me of an exhortation often made by my departed good friend and colleague, Judge Alfred P. Murrah of the tenth circuit. In addressing new district judges at the Federal Judicial Center, he would say:
 
 
 172
 Remember, you may not have the authority, but as federal judges you have the power!
 
 VIII.
 
 173
 At bottom then, the decision of this court reflects a difference in individual value judgments that always enter that unique American brew known as due process. The question presented in any of these cases is straightforward and unsophisticated: how seriously is the complainant being hurt and how much will it cost to afford him or her a more effective procedure?[29]
 
 
 174
 I put aside the argumentum ad misericordiam that always surfaces when the debtor is recognized as a widow receiving Social Security benefits. Although in this case the original creditor was a finance company, my experience has indicated that often an impecunious creditor can face a similar financial plight. In light of the legal expenses of court collection procedures and the prevalence of tenancies by the entireties and encumbrances on the average person's chattels and realty, individual creditors deserve the same emotional appeal that has surfaced here in behalf of the small debtor. Even were I to discount these circumstances, and evidence a bias in favor of the consumer against the savagery of predatory finance companies-a bias to which I might freely admit-I have observed that every time a consumer group has been victorious in a legal battle against a financial institution, the victory has been short lived. It is the law of the great clauses-equal protection and due process-that controls the legal decision. But it is the law of the marketplace that controls thereafter. Once a court victory is registered in this field, imposing new procedural requirements on a party or class of litigants, the law of economics inexorably demands that some additional expense be imposed, and under the free enterprise system that additional cost, whether in the form of tighter credit or heftier financing charges, is invariably borne by the consumer. Thus, although logicians concede that an appeal to pity can be legitimate, and here I proceed under this assumption, I am not convinced that our sympathy affects the ultimate balance beyond the courtroom. We should therefore consider the issue of due process with a minimum distraction imposed by sympathetic pleas.
 
 
 175
 Due process, as Justice Frankfurter taught,
 
 
 176
 is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts .... (A)s a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account.
 
 
 177
 Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960). I have not been persuaded, either by the record or arguments in this case, that applying what Justice Frankfurter called the rules of fair play, the present Pennsylvania practices are so abhorrent that a federal court must rise as a majestic colossus and deliver a bruising polemic lecture to the Pennsylvania courts that their attachment execution procedures defile the nest of due process. Notwithstanding the respect I have for my colleagues of the federal judiciary, my affection for them is not a bit diluted in a recognition that some federal judges have a blind spot when it comes to state-federal relations; some sincerely, if not passionately, believe that state courts do not vindicate the constitutional rights of their inhabitants, that there is a virtual presumption of state court incompetence in most adjudications, and that the federal courts must be constantly on the alert to intrude at each whispered invitation. I have elsewhere indicated that this philosophy seems to be a party line preached by a large number of the academy to generations of law students in recent decades.[30]
 
 
 178
 At best, I cannot fault the expression of this viewpoint, because I am convinced that it is a value judgment sincerely held. But like my own, it is just that. "I realize that it is far easier to substitute individual judges' ideas of 'fairness' for the fairness presented by the Constitution," Justice Black once observed, "but I shall not surrender my belief that the document itself should be our guide, not our own concept of what is fair, decent, and right."[31]
 
 
 179
 The case before us puts us to the test; it makes it difficult to draw, intellectually and dispassionately, the distinction between evaluating a procedure which we would have devised had we been Pennsylvania's Procedural Rules Committee or that state's supreme court, and evaluating an existing procedure from a federal due process vantage point. The distinction between what is preferred and what is unconstitutional must always be identified and never blurred. Federal judges who have the power to delineate this distinction must be careful not to confuse "our druthers" with principled constitutional adjudication.
 
 
 180
 My bottom line is this: decisions on mootness must always be principled. We must at all times avoid the cynicism, probably justified, voiced by segments of the bar, the trial courts, and the academy: "Mootness means that the appellate court simply doesn't want to hear the case. If they want to hear it, they will apply some exception to the mootness rule." Here, I can find no principled exception to the rule. I am also in fundamental disagreement with the majority's determination that there is no promptness in disposing of a debtor's exemption claim under the Pennsylvania Rules of Civil Procedure.
 
 
 181
 I completely disassociate myself from the notion that the state or the creditor should supply the debtor with any notice of exemptions. There is no counterpart in the federal rules of civil procedure requiring an adversary to perform a comparable act in any stage of the proceedings. What has been established as precedent today will unerringly require that the debtor be supplied with a laundry list of all exemptions. At best, this ultimate requirement is merely unperformable; at worst, it will generate a host of problems for both state and federal courts. I predict that the Community Legal Services, Inc., will also eventually assemble a number of cases and contend that the ultimate list will be too unintelligible for lay comprehension, or that it should be printed in Spanish for the large Hispanic population, or in Russian for the burgeoning numbers of Soviet refugees now settling on the eastern seaboard. But the notice provision graphically illustrates how the majority's solution fails to meet its ideal of due process: the solution engenders too many social, economic, and judicial problems to solve the original complaint. At every step considering due process claims we must never lose sight of the basic question: how seriously is the complainant being hurt and how much will it cost to afford him or her a more effective procedure.
 
 IX.
 
 182
 Accordingly, I would vacate the district court judgment and remand these proceedings with a direction to certify a class and then enter judgment in favor of the defendants against the class.
 
 APPENDIX
 Alabama
 
 183
 The debtor must receive notice of the garnishment at least five days before condemnation, but no notice of exemptions need be included. Ala.Code § 6-10-37. The debtor has the responsibility for claiming his exemptions after garnishment. Id. The creditor may then contest the claim. The trial resulting from a contest of a claim of exemptions is a "preferred case," but need not necessarily be "prompt." Id. § 6-10-30; see id. § 6-10-37.
 
 Alaska
 
 184
 When a judgment has been obtained by default, the debtor must receive at least fifteen days notice before payment to the creditor. Alaska Stat. § 9.35.035(2). The notice must inform the debtor "in lay terminology," of exemptions available under state and federal law. Id. § 9.35.035(3)(A). If a debtor files a claim, a hearing must be held within three days or as soon as practicable. § 9.35.035(4).Arizona
 
 
 185
 A postjudgment writ of garnishment is provided under Ariz.Rev.Stat.Ann. § 12-1571(A)(2). This statute does not specifically require notice to the debtor or provide him an opportunity for a prompt post-garnishment hearing.
 
 Arkansas
 
 186
 The debtor must claim his exemption and file it with the court. The creditor must then request a hearing within five days. The statute specifies no time for the hearing. If the exemption is found valid with respect to property that was previously garnished, the property must be returned to the debtor. Ark.Stat.Ann. § 30-209.
 
 California
 
 187
 The statute provides that certain property is exempt from attachment and execution without need for a claim. See Cal.Civ.Proc.Code §§ 487.020(a), 690(b) (West); see esp'lly id. § 690.7 ($1,000 bank account exemption). Property not specifically exempted must be claimed to be exempt by debtor, following procedures set out in § 690.50. See id. § 690(a). There is no mention of exemption notice to the debtor. Under § 690.50, the debtor must file his claim of exemptions with the court; the court must then "forthwith" notify the creditor that the debtor has filed an exemption. The creditor then has five days to contest the debtor's claim, and if he fails to do so, the property is released to the debtor. If the creditor contests, either party has five days to move for a hearing, which must then be held within fifteen days from the making of the motion (unless continued by court for "good cause"). Section 690.50 is superseded by § 482.100, however, for property listed in § 487.020 if the debtor so chooses. This property is basically wages and property necessary for support of the debtor and his family. See § 484.530 (debtor's choice of statutory sections). Section 482.100(c) provides that a hearing must be held within five days of the motion for a hearing. The schema requires no notice to the debtor of available exemptions.
 
 Colorado
 
 188
 The debtor must file his claim of exemption. Colo.Rev.Stat. § 13-55-101. He receives notice of the seizure, but the notice need not specify available exemptions. See id. § 13-55-102. A hearing on the debtor's claim must be held not less than five days but not more than fifteen days after filing of the claim. Id. § 13-55-104.
 
 Connecticut
 
 189
 Conn.Gen.Stat.Ann. § 52-367a (West) allows postjudgment garnishment of bank accounts but specifies no procedure for notifying the debtor or for him to claim exemptions. The statutes do not mention notice of exemptions available to the debtor. "Exempt" is defined in § 52-352a as "not subject to any form of process ... for ... debt collection."
 
 Delaware
 
 190
 Del.Code Ann. tit. 10 § 4902 lists exempt property. The statutes specify no procedure for filing exemption claims or requiring a prompt post-garnishment hearing. See also id. §§ 5031-32.
 
 District of Columbia
 
 191
 Exemptions are listed in D.C.Code Ann. §§ 15-501, 15-503, but no provision is made for notifying the debtor of them. The debtor must file his claim with the court and a trial of the exemption issue is held. Id. § 15-521. Trial of an exemption claim must be held "promptly." Id. § 15-503(d). See id. § 16-541 to 556; D.C.R.Civ.P. 69, 69-I, 69-II.
 
 Florida
 
 192
 The debtor receives no notice of available exemptions. The creditor need not file an affidavit with the writ of garnishment negating possible exemption claims. Fla.Stat.Ann. § 77.03 (West). If he wishes to claim an exemption, he must file an inventory of all his personal property, specifying items that are exempt. Id. § 222.06(1). The court issuing the writ of garnishment "shall always be open for hearing motions to dissolve the garnishment." Id. § 77.07. The creditor has twenty-four hours to contest the debtor's claim after receiving notice. If the garnished money is due to the debtor for personal labor or services, he must file an affidavit to that effect and stating that he is the head of a household. Id. § 222.12. Although a hearing is provided, the statute does not mandate that it be prompt, and the money remains garnished until the hearing is held. These procedures were held constitutional in Brown v. Liberty Loan Corp., 539 F.2d 1355 (5th Cir. 1976), cert. denied, 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977).
 
 Georgia
 
 193
 The debtor receives notice of the garnishment, but the notice need not include a list of exemptions. Ga.Code Ann. § 46-105(a), (b). The debtor may become a party to the garnishment proceedings, id. § 46-401, and may raise exemption claims in that proceeding, id. § 46-403. If he prevails, the garnishment is released. Id. § 46-512. Although no time is specified for conducting the trial, the debtor's claims are tried before those of the creditor or other claimants. The Court of Appeals of Georgia has recently held that Social Security benefits in a bank account are exempt from execution and may not be garnished. Anderson v. First National Bank, 151 Ga.App. 573, 260 S.E.2d 501 (1979).
 
 Hawaii
 
 194
 The relationship between postjudgment garnishee and creditor is governed by Hawaii Rev.Stat. § 652-1(b). That section makes no provision for notifying the debtor. The debtor may be able to assert exemptions through the interpleader procedure in § 652-9, but the section is unclear. Assertion of exemptions in execution generally is governed by §§ 651-61 to 63, but no procedures are specified for asserting exemptions to postjudgment garnishment.
 
 Idaho
 
 195
 Although postjudgment garnishment is available in Idaho, Idaho Code § 11-507, the procedures are unclear. No notice to the debtor is required. Under the prejudgment attachment procedure, however, the debtor receives notice of the attachment, without specification of exemptions, by notice posted on the courthouse door and published in the local press. Id. § 8-503. The debtor may plead an exemption claim, which is then tried in the garnishment proceeding; no specification of time for the hearing is made. Id. § 8-519.
 
 Illinois
 
 196
 The debtor receives no notice of the garnishment. See Zimek v. Illinois National Cas. Co., 370 Ill. 572, 19 N.E.2d 620 (1939). The garnishee must hold only "non-exempt" property of the debtor for the creditor. Ill.Ann.Stat. ch. 62, § 39(a) (Smith-Hurd). The statute may allow the debtor to intervene in the garnishment action. See id. § 42(b). Exemptions are listed in ch. 52, § 13.
 
 Indiana
 
 197
 Under Ind.Tr.R. 64, postjudgment garnishment is allowed, but the procedures are unclear. The debtor must claim his exemptions, but is provided with no notice of available exemptions. See Ind.Code Ann. § 34-1-11-20 (Burns). Although the debtor can obtain the immediate release of his property by filing a bond, he apparently must await the garnishment hearing to assert his exemptions. See id. § 34-1-11-42.
 
 Iowa
 
 198
 Iowa law precludes entry of judgment against the garnishee until the debtor has had at least ten days notice of the garnishment. Iowa Code Ann. § 642.14. The notice need not specify possible exemptions. The debtor may then plead his exemptions, which are tried with the issues relating to the garnishee's liability. Id. § 642.15.
 
 Kansas
 
 199
 Within twenty days after the garnishee is served with the order of garishment, he must file an answer. Kan.Stat.Ann. § 60-718(a). The clerk must "promptly" serve copies of those answers on the creditor and debtor, id. § 60-718(c), but exemptions need not be specified. The creditor and debtor then have twenty days to contest the answer, id., and the debtor may file exemption claims, id. § 60-720(c). A hearing is then held if necessary, but no time constraints appear in the statute. Id. § 60-721(a).Kentucky
 
 
 200
 The garnishee must deliver a copy of the order of garnishment to the judgment debtor. Ky.Rev.Stat. § 425.501(3). No list of exemptions is required. The debtor must then claim his exemptions within the time provided for the garnishee to answer. Id. § 425.501(4); see Ky.R.Civ.P. 12.01 (allowing twenty days for an answer). The statute does not require a prompt post-garnishment exemption hearing prior to the time the garnishment hearing would normally occur. Ky.Rev.Stat. § 425.501(4), (5).
 
 Louisiana
 
 201
 The procedure is unclear. La.Rev.Stat.Ann. § 13:3881 lists exempt property. The rules of procedure applicable to garnishment, however, fail to indicate either how the debtor receives notice of the garnishment, or the procedure, if any, by which he could contest the garnishment. La.Code Civ.P.Ann. Art. 2411-17 (West).
 
 Maine
 
 202
 Under the law of Maine, garnishment is referred to as "trustee process." The trustee is the garnishee, and has an opportunity to assert defenses when the judgment creditor attempts to enforce his judgment. 14 Me.Rev.Stat.Ann. § 2955. No provision is made for notification of or argument by the debtor, although the property is returned to him if the trustee successfully defends. Id. § 2957.
 
 Maryland
 
 203
 Md.Code Ann. art. 11, § 103 authorizes garnishment of bank accounts by court order. Md.Cts. & Jud.Proc.Code Ann. §§ 11-504 and 11-505 list exemptions. Under Md.R.Civ.P. G48, the debtor must receive notice of the garnishment, and may then within fifteen days, see id. 307(a), move for dissolution, id. G51(a). The court must hold a hearing on the motion "forthwith." Id. G51(b). No list of exemptions is required.
 
 Massachusetts
 
 204
 As in Maine, Massachusetts refers to garnishment as "trustee process." Mass.Gen.Laws Ann. ch. 235, § 34 (West) lists property exempt from execution. In addition, the debtor has an exemption for $500 in his bank account, which the order of garnishment to the bank must specify and which is automatically exempted. Id. ch. 246, § 28A. Wages and other assets are not subject to prejudgment trustee process without first notifying the debtor and providing him with a hearing. Id. § 32. Garnishment of other assets does not require notification of the debtor. Id. § 5. The statute does not specify a similar procedure for postjudgment trustee process.
 
 Michigan
 
 205
 Mich.Comp.Laws Ann. § 600.4011 allows garnishment to enforce a judgment, but requires no notice to the debtor. Under § 600.4031, exemptions from execution also apply to garnishment, but the section sets forth no procedure for raising exemption claims. Notice to the debtor from the garnishee, without a list of exemptions, is required by Mich.Ct.R. 738.3(4)(d). The rules require a hearing on the garnishment claim, but do not explicitly allow the debtor to participate. Id. 738.11(1); but see id. 738.9(4); Pease v. North American Finance Corp., 69 Mich.App. 165, 244 N.W.2d 400 (1976).
 
 Minnesota
 
 206
 In Minnesota, a copy of the garnishee summons, which need not list exemptions, must be sent to the debtor within five days of service on the garnishee. Minn.Stat.Ann. § 571.471. The garnishee has twenty days after service of summons to answer. Id. The debtor is apparently allowed to participate in the garnishee hearing and assert his exemptions in it, but that hearing will be at least twenty days after the summons if the garnishee uses its full allotment of time to answer.
 
 Mississippi
 
 207
 The debtor receives formal notice of the garnishment only if the garnishee asserts a belief that the debtor has exemptions, but the notice does not include a list of exemptions. Miss.Code Ann. § 11-35-33. The proceedings are then stayed until the exemption claim is determined. Id. If the debtor received advance notice of the garnishment, he could perhaps suggest that the garnishee raise the exemption issue or intervene to raise it himself. See also id. § 11-35-47.
 
 Missouri
 
 208
 The debtor receives notice of the garnishment, with no requirement for listing of exemptions, at the same time the garnishee receives the summons. Mo.Rev.Stat. §§ 525.020, 521.170. The statute allows third party claimants to assert their claims, which must be tried before judgment is entered against the garnishee. Id. § 525.090. The debtor might be able to assert his exemptions under this procedure.
 
 Montana
 
 209
 Although only property that is non-exempt is subject to execution, Mont.Rev.Codes Ann. § 25-13-501, the statutes on execution do not mention procedures for notifying the debtor of garnishment or for him to claim exemptions. Although postjudgment garnishment is allowed under § 25-13-502, the procedures relevant to it are unspecified.
 
 Nebraska
 
 210
 The debtor receives a copy of the garnishee summons, which need not include a list of exemptions, when it is sent to the garnishee. Neb.Rev.Stat. § 25-1056. The garnishee must then hold all property in its possession unless the property is wages payable, in which case it must pay the debtor the amount exempted. Id. Trial of disputed issues is the same as in any civil trial, and the creditor must give notice to the garnishee and debtor of the trial as the court directs. Id.; see id. §§ 25-1030.01 to .02. At trial, the debtor may assert exemptions. Id. § 25-1030.03.
 
 Nevada
 
 211
 The statutes contain no specific provision for notifying the debtor, Nev.Rev.Stat. § 31.260, but he must raise his exemption claims within five days of the garnishment. See id. §§ 31.450, 21.112. After he files the affidavit claiming exemptions, the creditor must post a bond to indemnify the debtor or the property will be released. Id. § 21.112(2). No provision is made for a prompt post-garnishment hearing, apparently because the property is automatically released unless the creditor posts a bond.
 
 New Hampshire
 
 212
 N.H.Rev.Stat.Ann. § 512.21 lists property that is exempt from execution. Trustee process is an acceptable method of satisfying judgments, but the statutes prescribe no method of notifying the debtor or procedure for him to assert exemptions. See id. § 512.36.
 
 New Jersey
 
 213
 The debtor receives notice of the garnishment, with no requirement for a list of exemptions, when the garnishee is served. N.J.Stat.Ann. § 2A:17-63 (West). No provision is specified for claiming or trying exemptions.
 
 New Mexico
 
 214
 The statutes contain no requirement that the debtor receive notice of the garnishment. See N.M.Stat.Ann. § 35-12-2; see § 39-4-3. The debtor must file his exemptions claim, but no time for filing or adjudication is specified. Id. § 42-10-13.
 
 New York
 
 215
 N.Y.Civ.Prac.Law § 5205 (McKinney) lists exempt property. The procedure for garnishment includes no requirement that the debtor be notified. Id. § 5232(a). Because execution garnishment requires the garnishee to turn the property over to the sheriff "forthwith," the debtor's ability to assert exemptions seems severely limited. Id.
 
 North Carolina
 
 216
 Execution first issues against property held by the debtor, but if that execution is unsatisfied garnishment is available. N.C.Gen.Stat. § 1-360; see id. § 1-313. The court has discretion whether to notify the debtor, id. § 1-360, but no provision is made for claiming and proving exemptions.
 
 North Dakota
 
 217
 Unless the garnishee summons is also served on the debtor, it becomes void. N.D.Cent.Code § 32-09-09. The debtor then has thirty days in which to assert his exemptions, id. § 32-09-20, and does so by filing a schedule of property with the court, id. § 32-09-22. The exemption claim may be heard at any time thereafter on three days' notice to the creditor. Id. § 32-09-23.
 
 Ohio
 
 218
 Although postjudgment attachment is authorized under Ohio law, Ohio Rev.Code Ann. § 2715.01 (Page), the statute refers primarily to prejudgment attachment. The debtor may apparently intervene in the action to assert exemption claims in the same manner nonparties may intervene. Id. § 2715.40. No notice or opportunity for prompt post-garnishment hearing is specified. An exception to this schemae arises when the creditor seeks to garnish wages. In that situation the debtor is told that unless he pays within fifteen days his earnings will be garnished, and that he can avoid garnishment by doing one of three things in the fifteen day period: (1) paying the amount due; (2) completing the attached form entitled "(p)ayment to avoid garnishment" and returning it with the payment; or (3) applying to local municipal or county court for appointment of a trustee. Id. § 2715.02. No notice of exemptions or prompt post-garnishment hearing is required.
 
 Oklahoma
 
 219
 The defendant receives the garnishee summons at the same time it is served on the garnishee. Okl.Stat.Ann. tit. 12, § 1173 (West). Several exemptions are listed in the summons. Id. The garnishee must respond within ten days, id. § 1176, and the creditor in turn has twenty days to contest that answer, id. § 1177. No time is specified for the trial of the dispute. The defendant may claim exemptions at any time after he receives the garnishee summons, and may participate in the trial of those issues. Id. § 1181. In suits to collect child support, the debtor has fifteen days to contest the garnishment. Id. § 1174.
 
 Oregon
 
 220
 When a judgment creditor applies for garnishment, a copy of the garnishment documents must be mailed to the debtor, with a notice of exemptions and instructions that the debtor may be required to explain his exemption claims in court. Or.Rev.Stat. § 23.665(3). It also advises the debtor that he should consult an attorney if he has any questions. Implicit in § 23.665 is the right to a hearing on the exemption issue; it also implies that a claim of exemption effects a release of the exempt property absent protest by the creditor.
 
 Rhode Island
 
 221
 Exemptions are enumerated in R.I.Gen.Laws § 9-26-4. The procedure for executing a judgment, apparently applicable to garnishment, contains no requirement that the debtor be notified. See id. § 9-25-12. The debtor must look to case law for the procedure to claim exemptions. McKenna v. Lucas, 21 R.I. 509, 45 A. 101 (1900).
 
 South Carolina
 
 222
 By filing an affidavit that specified persons have debts owing to the judgment debtor, the creditor can obtain the right to examine those persons regarding their liability to the judgment debtor. S.C.Code § 15-39-350. The judge has discretion to notify the debtor of the proceeding. Id. After the examination, the judge may order nonexempt property applied against the judgment. Id. § 15-39-410. No list of exemptions is required, and a hearing for the debtor is apparently discretionary. Id. § 15-39-350.
 
 South Dakota
 
 223
 Unless the garnishee summons and affidavit are served on the judgment debtor, the garnishment is void. S.D. Codified Laws Ann. § 21-18-10. Notice of exemptions is required in neither the affidavit nor the summons. The debtor may obtain a partial release of the funds at any time before the garnishment proceeding is heard. Id. § 21-18-23. The debtor may assert his exemptions in the garnishment proceeding if he answers the garnishee summons within thirty days. Id. § 21-18-42.
 
 Tennessee
 
 224
 The general procedures for execution by garnishment appear at Tenn.Code Ann. §§ 26-501 to 523. The statutory schema includes no requirement that the debtor be notified of his exemptions, or that he be afforded a hearing in which to assert his exemptions. If the debtor's wages are garnished, he must be notified, through the garnishee, that he can apply to the court to prevent subsequent garnishments by the same creditor. Id. § 26-245.
 
 Texas
 
 225
 The procedure for execution garnishment appears in Tex.R.Civ.P. 657-79. The rules require no notice to the judgment debtor, and seem to require him to post a bond in twice the amount of the outstanding judgment before he can defend in the garnishment action. Id. 664. Case law allows him to appear without posting bond, however. See Phillips v. Interstate Securities Co., 250 S.W.2d 444 (Tex.Civ.App.1952). Garnishment disputes receive no expedited treatment. Tex.R.Civ.R. 675, 676.
 
 Utah
 
 226
 The debtor receives no notice of the garnishment. See generally Utah R.Civ.P. 64D. No specific procedure exists for the debtor to assert his exemptions, although a garnishee-employer must set aside the exempt wages for the debtor. Id. 64D(e)(iii)-(v). The rule implies, however, that the debtor can contest the garnishee's answers to interrogatories. Id. 64D(j). No requirement exists for a prompt post-garnishment hearing.
 
 Vermont
 
 227
 Vermont allows trustee process both before and after judgment, but wages are subject to it only after judgment. 12 Vt.Stat.Ann. § 3168(a). The judgment debtor then receives notice, although a list of exemptions is not required. Id. § 3168(b). A hearing must be held, at which the debtor may claim exemptions. Id. §§ 3168(b), 3170(a). The procedure for garnishing bank accounts and trying exemption claims of them is not specified.
 
 Virginia
 
 228
 The judgment debtor must be served with the garnishee summons. Va.Code § 8.01-511. The summons is returnable within ninety days. Id. § 8.01-514. Special provisions prohibit garnishment of exempt wages and allow the garnishee-employer to rely on the debtor's federal income tax exemption claims in setting aside a portion of the wages as exempt from execution. Id. §§ 34-29, 8.01515, 8.01517. The garnishee summons, which the debtor receives, must reprint § 34-29, which sets forth exemptions from wage garnishment. Id. § 8.01512. No procedure specifically applicable to garnishment of bank accounts is included.
 
 Washington
 
 229
 The judgment debtor receives a copy of the garnishment summons and the outstanding judgment. Wash.Rev.Code Ann. § 7.33.320. When the creditor seeks garnishment of wages due to the debtor, the notice to the garnishee must inform him that the garnishment is only valid against nonexempt wages, but it need not list the exemptions. Id. § 7.33.360; see id. § 7.33.280. When the garnishee is a bank or savings and loan association, the summons must identify the debtor more specifically, but still need not list exemptions. Id. § 7.33.100. The debtor may challenge the garnishee's answers to the summons and interrogatories within twenty days, id. § 7.33.250, and a hearing "as in other cases" is necessary, id. § 7.33.260. The debtor apparently may assert exemptions by this procedure.
 
 West Virginia
 
 230
 The procedures specified for garnishment seem to apply only to prejudgment attachments. W.Va.Code Ann. § 38-7-15. When a judgment creditor executes a judgment against wages due to the debtor, the debtor need not receive notice. Id. § 38-5A-3. The creditor must demonstrate that sufficient non-exempt wages are due before the garnishment will be effective. Id. To claim exemptions, the debtor must detail his exemptions and serve them on the officer holding the execution. Id. § 38-8-3. The officer then issues a certificate of exemption to the debtor, and the garnishee must honor the certificate on presentation. Id. § 38-8-7. No specific provision is made for notifying the debtor of his exemptions or allowing him to litigate disputed claims.Wisconsin
 
 
 231
 The debtor must receive notice of the garnishment within ten days of the issuance of the summons. Wisc.Stat.Ann. § 812.07 (West). The garnishee summons contains a general description of wage exemptions. Id. § 812.04(2). The debtor may file a reply to the garnishment summons within twenty days of his receipt of it. Id. § 812.15. He may also defend in the garnishment action, and probably could assert exemptions under this procedure. Id.; see also id. § 812.11(4).
 
 Wyoming
 
 232
 When the garnishee summons issues to the garnishee, the court may require notice to be given to the judgment debtor. Wyo.Stat. § 1-17-405. A hearing before a master is necessary to settle disputed claims, but no time is specified. Id. § 1-17-408. The statute specifically orders the court to respect the earnings exemption. Id. § 1-17-411; see also id. § 1-17-501.
 
 
 233
 WEIS, Circuit Judge, dissenting.
 
 
 234
 Based on my independent research as well as my experience as a Common Pleas Judge and Pennsylvania practitioner, I, too, am convinced that the majority has erred in its interpretation of the state procedural rules. I believe that, properly construed, the rules do provide the process that is due in the context of a postjudgment proceeding. I agree with Judge Aldisert's thorough analysis of the Pennsylvania Rules and, therefore, dissent from the majority's holding to the contrary.
 
 
 235
 I also share Judge Aldisert's misgivings about the desirability and effectiveness of the notice required by the majority. There are simply too many variations and nuances in the Pennsylvania exemption laws to permit the preparation of a brief yet comprehensive, and simple yet precise, explanation that will be of assistance to the average debtor. The fragmented approach taken by the majority in this case inevitably will lead to further litigation and the same overkill that has characterized the excrescent disclosure requirements created by administrative and judicial interpretations of the Truth in Lending Act.
 
 
 236
 There comes a point at which too much information serves to confuse rather than to clarify. A form notice for use in all postjudgment executions will certainly fail to address some situations and only result in further uncertainty. For example, the notice suggested by the majority would include reference to the $300 exemption under Pennsylvania law. But the statute, 42 Pa.C.S.A. § 8123(b), also provides that the exemption does not apply to any judgment:
 
 
 237
 (1) For support.
 
 
 238
 (2) Debtor who is not an individual.
 
 
 239
 (3) Obtained for board for four weeks or less.
 
 
 240
 (4) For $100 or less obtained for wages for manual labor.
 
 
 241
 (5) Obtained in mortgage foreclosure.
 
 
 242
 If the notice is to be accurate, presumably information on these exceptions to the $300 exemption should be given also.
 
 
 243
 But even the inclusion of these exceptions will not render the notice completely accurate. There are, for example, many persons who do not obtain social security but are living on modest pensions that are also exempt under Pennsylvania law. 42 Pa.C.S.A. § 8124. Their situation is no better than that of the plaintiff here and on an equitable basis should be treated the same. One of two approaches could be taken in drafting notices to these persons, and others as well, of their rights under the Pennsylvania statute. A single notice, reiterating as it must almost all of the exemptions from execution statute, could be devised for general use. Such a notice, however, would prove too technical and cumbersome. Alternatively, individualized notices, requiring as they will, knowledge of each debtor's particular circumstance, could be written. Neither solution would be practical.
 
 
 244
 Moreover, I am not impressed with the equities of imposing additional procedural burdens on a creditor who has already been put to the trouble and expense of securing a judgment against a debtor who has failed to meet his obligations. The identities of the parties to this litigation and their relative ability to cope with the problem may obscure that circumstance somewhat, but our decision affects all creditors and debtors within the Circuit.
 
 
 245
 Some responsibility for safeguarding the exemption could be placed upon the debtor. One suggestion comes to mind. A person in the position of the plaintiff, a judgment debtor who wishes to preserve the social security exemption with a minimum of trouble, could open a special bank account into which only his social security checks would be deposited. The bank would be notified of the contents of the account and thus in a position to raise the exemption issue upon garnishment. Although the Pennsylvania Procedural Rules do not mandate that the garnishee raise a defense of exemption, see 9 GOODRICH-AMRAM 2d § 3141(a):1.1 (1977), the garnishee may choose to do so. I have little doubt that a bank, aware of the contents of the account, would promptly bring the matter to the attention of the sheriff and creditor and thus eliminate the need for litigation in almost all instances. Other arrangements might be devised to protect other exemptions in varying situations.
 
 
 246
 Because Pennsylvania law, as properly interpreted, does provide due process, and in any event, the remedy proposed is not effective, I dissent.
 
 
 
 *
 Honorable Hubert I. Teitelbaum, United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 The term "garnishment" refers to the process of execution against property held by someone other than the debtor. "Attachment" refers to the seizure imposed on property held by a garnishee at the beginning of the garnishment process
 
 
 [2]
 The amended complaint substituted for Cortese his successor as prothonotary, John Pettit, and the district court entered judgment in Pettit's name. See Fed.R.Civ.P. 25(d)(1). However, the dockets of the district court and of this court still name Cortese as the defendant prothonotary, and counsel for the prothonotary still refer to their client as Cortese. Although the proceedings following the substitution should have been in Pettit's name, we may disregard "any misnomer not affecting the substantial rights of the parties." Id.; Fed.R.App.P. 43(c)(1). No one has suggested that the continued reference to Cortese as prothonotary has affected substantial rights. We take note of the practice only to avoid confusion
 
 
 [3]
 In a third claim, Mrs. Finberg sought damages of $23.50 from Sterling as compensation for an amount that PNB retained as fees for its services as a garnishee. The district court awarded this relief. Sterling has not seen fit to appeal such award
 The amended complaint also named three other individuals as additional plaintiffs on the declaratory judgment claims. The district court's final order included a grant of summary judgment for defendants on these plaintiffs' claims as well. These plaintiffs have not appealed.
 
 
 [4]
 The sheriff argues that the judgment debtor can invoke Philadelphia Court Rule 20, which makes a judge available on evenings and weekends for emergency matters like urgent petitions for temporary restraining orders. Assuming that a debtor can invoke this rule to assert an exemption, the ability to file a rule 3121(d) petition at night or over a weekend, rather than wait for the next business day, will not shorten the 15-day period by very much. We find nothing in rule 20 that allows a judge to dispense with the 15-day period of rule 140
 
 
 [5]
 Pa.R.Civ.P. 3123:
 (a) A defendant entitled to a statutory exemption may claim it in kind or in cash at any time before the date of sale by notifying the sheriff of his claim and, if the exemption is claimed in kind, by designating the property which he elects to retain as exempt....
 (b) Upon receipt of a claim for exemption in kind the sheriff shall set aside, from the designated property, enough thereof as appraised by him, to equal the value of the exemption, unless the property is incapable of division. In the event of failure of the defendant to claim his statutory exemption, the sheriff shall similarly choose, appraise, and set aside property in kind....
 (c) If the sheriff cannot set aside property in kind because the property in his hands is not capable of appropriate division, he shall set aside from the proceeds of the sale and pay to the defendant in cash the amount of his statutory exemption.
 (d) Any party in interest may, within forty-eight (48) hours, appeal to the court from the sheriff's appraisal or designation of property. The sheriff shall proceed with the sale as to the remainder of the property levied upon unless the sale shall be stayed by order of the court or written direction of the plaintiff.
 
 
 [6]
 Prior to the adoption of the current rules in 1960, a process similar to rule 3123 was available for submitting claims of exemption directly to the sheriff. § 2 of the Act of April 9, 1849, P.L. 533, 12 Pa.Stat.Ann. § 1262 (Purdon 1967) (repealed 1978). See Pa.R.Civ.P. 3241(54) (suspended use of this process in 1960 for proceedings to execute money judgments). The Pennsylvania Supreme Court recognized that this process had no application in a garnishment of a debt because the sheriff does not hold the debtor's property in preparation for a sale. Bancord v. Parker, 65 Pa. 336, 337-38 (1870). Our reading of rule 3123 is essentially the same
 Under the old process, the judgment debtor could claim an exemption for intangible property frozen in the hands of a garnishee either by notifying the sheriff of the claim when the sheriff served him, the debtor, with the writ of execution, or by asserting the claim in court during proceedings on the garnishment. Id. at 338. See also Hild Floor Machine Co. v. Rudolph, 156 Pa.Super. 102, 39 A.2d 457 (1944). The first of these opportunities, notice to the sheriff at the time of service, has no counterpart under the current rules because the sheriff does not serve the debtor. See Pa.R.Civ.P. 3111(a), 3140(a). The second opportunity, assertion of the claim to a court, has a counterpart in rule 3121(d).
 
 
 [7]
 The garnishee "forwards" a document to the debtor either by serving it on a competent adult in accordance with the rules for serving a writ of summons or by sending it to the debtor's last known address by registered mail. Pa.R.Civ.P. 3140(c)
 
 
 [8]
 The rules give the garnishee an incentive to forward these documents by holding that the garnishee "shall thereafter be under no duty to resist the attachment or defend the action against the defendant in any manner." Pa.R.Civ.P. 3141(a). They do not provide that a failure to forward documents shall subject the garnishee to contempt of court. Nor does a failure affect the judgment creditor's right to proceed with the garnishment. Mrs. Finberg's argument rests on the absence of such provisions
 
 
 [9]
 The district court also found it "doubtful" that the proposed classes shared common questions of law or fact, as required by Fed.R.Civ.P. 23(a)(2). 461 F.Supp. at 257 n.7. The complaint proposed a class of judgment debtors in Philadelphia with "legal or equitable defenses to set aside the execution" and a subclass of debtors holding property exempt "by virtue of federal law." The district court explained: "The broad spectrum of federal and state exemptions that may be claimed in a Pennsylvania garnishment proceeding implicates a correspondingly broad spectrum of factual scenarios, only a fraction of which is spanned by the facts presented in this case." Id
 Whether or not this statement reflects a proper application of the common questions requirement of rule 23(a)(2), or of the typicality requirement of rule 23(a)(3), we cannot rely on it to uphold the denial of class certification. The problem identified by the district court might well be remedied by requiring a more specific or a narrower definition of classes. The district court should not deny certification on account of such problems without considering the possibility of redefining the classes. See Bogosian v. Gulf Oil Co., 561 F.2d 434, 453 (3d Cir. 1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); Samuel v. University of Pittsburgh, 538 F.2d 991, 995-96 (3d Cir. 1976).
 
 
 [1]
 A. Cox, The Role of the Supreme Court in American Government 113 (1976)
 
 
 [2]
 Under 28 U.S.C. § 2281, repealed by Act of August 12, 1976, Pub.L.No. 94-381, a three-judge district court was required whenever a litigant sought an injunction against a state statute on federal constitutional grounds. Whenever a three-judge court was convened, 28 U.S.C. § 2284(b)(2), which has not been explicitly repealed, required notice to the governor and attorney general of the affected state. Because § 2281 is no longer operative, the state officials responsible for enforcement of the state statutes no longer receive official notice of constitutional attacks in federal court. Compare Pa.R.Civ.P. 235 (requiring notice to the attorney general in any case attacking the constitutionality of a Pennsylvania statute)
 
 
 [3]
 Without denigrating the defense presented by the sheriff and the prothonotary, I suggest that much of what follows here, as with the majority opinion, is not attributable either to the briefs or arguments of the appellees. It will be interesting to note whether the County of Philadelphia will extend the finances to seek review of this Pennsylvania state issue in the United States Supreme Court
 
 
 [4]
 My examination of a random assortment of the Supreme Court's mootness decisions has failed to disclose an instance in which the Court has applied the "capable of repetition but evading review" exception to review contentions asserted by a petitioner who was fully victorious in the lower court. See, e. g., SEC v. Sloan, 436 U.S. 103, 109-10, 98 S.Ct. 1702, 1707-1708, 56 L.Ed.2d 148 (1978); First National Bank v. Bellotti, 435 U.S. 765, 774-75, 98 S.Ct. 1407, 1414-1415, 55 L.Ed.2d 707 (1978); United States v. New York Tel. Co., 434 U.S. 159, 165 n.6, 98 S.Ct. 364, 368, 54 L.Ed.2d 376 (1977); Nebraska Press Assn. v. Stuart, 427 U.S. 539, 546-47, 96 S.Ct. 2791, 2796-2797, 49 L.Ed.2d 683 (1976); Gerstein v. Pugh, 420 U.S. 103, 110-11 n.11, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975); Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 123-27, 94 S.Ct. 1694, 1698-1700, 40 L.Ed.2d 1 (1978); Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973); Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969)
 
 
 [5]
 Although a good case for federal court abstention on the constitutional issues could be made, I will not make it. A federal court may raise abstention sua sponte, see Bellotti v. Baird, 428 U.S. 132, 143-44 n.10, 96 S.Ct. 2857, 2864, 49 L.Ed.2d 844 (1976), but the complexion of this case has changed so dramatically since the panel argument that injection of that issue into this litigation at this date would put the parties at a disadvantage. As discussed above, the Supreme Court's decisions in United States Parole Commission v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), and Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), substantially altered the law of mootness in the period between panel and in banc consideration. Moreover, the majority's extensive analysis of state procedure was barely mentioned in the briefs or arguments. Finally, no pending state court decision addressing these issues has come to our attention, and no certification procedure exists in Pennsylvania as is available in Massachusetts with respect to Bellotti. The delay occasioned by abstention would thus militate strongly, though perhaps not decisively, against abstention
 Nevertheless, the same policies that support abstention should in this case counsel great caution in interpreting Pennsylvania procedure so as to render it violative of the due process clause. In its rush to hold the schema unconstitutional, the majority have unfortunately ignored settled precepts of statutory analysis binding both Pennsylvania courts and federal courts. The unavoidable result will be a needless increase in tension between state and federal legal systems.
 
 
 [6]
 Justice Rehnquist has recently written that
 (t)he proper administration of justice in any nation is bound to be a matter of the highest concern to all thinking citizens. But to gradually rein in, as this Court has done over the past generation, all of the ultimate decisionmaking power over how justice shall be administered, not merely in the federal system but in each of the 50 States, is a task that no Court consisting of nine persons, however gifted, is equal to.
 Richmond Newspapers, Inc. v. Virginia, --- U.S. ----, ----, 100 S.Ct. 2814, 2843, 65 L.Ed.2d 973 (1980) (Rehnquist, J., dissenting).
 
 
 [7]
 In her petition to proceed in forma pauperis, Mrs. Finberg, through her attorney, asserted that the $550 in her frozen bank account would be used, not for urgent personal needs, but "to purchase a headstone for petitioner's recently deceased husband." Petition to Proceed in Forma Pauperis at 2, P 7(a), Sterling Consumer Discount Co. v. Finberg, No. 5678 (Phila. Common Pleas, May Term, 1977)
 
 
 [8]
 It is noted that Mrs. Finberg filed a petition in the Philadelphia Common Pleas Court on November 18, 1977, to set aside the writ of execution on the basis of the Social Security exemption. After receiving the $300 state exemption on December 20, 1977, her counsel, Community Legal Services, Inc., failed to press the Social Security exemption and instead continued to press her motion to open the judgment. Following a deposition, the parties reached an amicable settlement on April 11, 1978, which culminated in the court order of April 25, 1978, releasing the funds
 
 
 [9]
 North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)
 
 
 [10]
 The ordinary practice is to rely on the more recent edition of a treatise. In this case, however, both editions of Goodrich-Amram present a substantially identical treatment of the Pennsylvania rules relevant to garnishment practice, even though the treatments were written by different authorities. The section entitled "Enforcement of Judgments for Payment of Money" in 9 Goodrich-Amram 2d was edited by Lewis C. Warden, but was authored originally by Professor A. Leo Levin, then vice provost and professor of law, University of Pennsylvania, now director of the Federal Judicial Center; Philip Shuchman, professor of law, University of Connecticut; and Robert A. Gorman, associate professor of law, University of Pennsylvania
 
 
 [11]
 As the authoritative treatise on Pennsylvania practice states:
 These Rules guard jealously the right to raise the defense that property is exempt or immune from attachment, as do those in foreign attachment after which the present Rule is patterned. One of the ways in which the garnishee may raise the issue of exemption or immunity is in his answer under new matter. He may, if he chooses, raise the defense earlier by way of preliminary objections, but if he fails to do so, the defense is not waived. In general, objections to the attachment must be raised preliminarily, but failure of the garnishee to do so with respect to this favored defense does not constitute a waiver. This preferred treatment should occasion no surprise; it is consistent with other provisions of the Rules.
 
 
 [3]
 Goodrich-Amram § 3145(b)-1, at 367-68 (footnotes omitted) (my emphasis); see also 9 Goodrich-Amram 2d § 3145(b):1, at 536-37
 
 
 [12]
 Mr. Amram is also the author of most provisions of Goodrich-Amram, the authoritative treatise interpreting the Pennsylvania Rules of Civil Procedure
 
 
 [13]
 Mr. Amram has observed:
 What the three pleading Rules mean is that the garnishee may raise the question at any one of the three periods, in the proceeding, to which Rules 1268(b), 1275(b) and 1276(c) relate. But he must raise it at one of the three places. Further, the Rules mean that if the question is raised, it must be adjudicated, and, if the property is immune or exempt, it must be released from the attachment and made available to the defendant.
 
 
 [2]
 Goodrich-Amram § 1268(a)-1, at 152; see 4 Goodrich-Amram 2d § 1268(a):1, at 217
 
 
 [14]
 Pa.R.Civ.P. 3123 states in relevant part:
 (a) A defendant entitled to a statutory exemption may claim it in kind or in cash at any time before the date of sale by notifying the sheriff of his claim and, if the exemption is claimed in kind, by designating the property which he elects to retain as exempt. Failure of the defendant to claim his statutory exemption shall not constitute a waiver thereof.
 (b) Upon receipt of a claim for exemption in kind the sheriff shall set aside, from the designated property, enough thereof as appraised by him, to equal the value of the exemption, unless the property is incapable of division. In the event of failure of the defendant to claim his statutory exemption, the sheriff shall similarly choose, appraise, and set aside property in kind....
 
 
 [15]
 The full text states: "The proceedings for claim of exemption are simplified and failure to claim the exemption in kind will no longer constitute a waiver of exemption but the sheriff is required to set aside either in kind or from the proceeds of sale the amount of the defendant's exemption unless otherwise waived. (Rule 3123)." Commentary preceding Pa.R.Civ.P. 3101, 42 Purd.Ann.Stat. at page 316
 
 
 [16]
 Hildebrand v. Bowman, 100 Pa. 580, 582 (1882); Ehrisman v. Roberts, 68 Pa. 308 (1871)
 
 
 [17]
 For example, Pa.R.Civ.P. 1017(b) indicates when a petition is necessary and when a motion is sufficient. A petition must be used to raise a question of jurisdiction or venue or attacking the form of service or writ of summons. A motion is the proper form for requesting that the court strike a pleading because it fails to conform to the law or rule of court, or because of scandalous or impertinent matter. A motion is necessary for a more specific pleading. A petition must be filed to raise the defense of lack of capacity to sue, pendency of a prior action, non-joinder of a necessary party, or misjoinder of a cause of action
 
 
 [18]
 See, e. g., Pa.R.Civ.P. 219 (applications for view of premises); Pa.R.Civ.P. 216(c) (application for continuance); see also Pa.R.Civ.P. 2328(a) (applications for intervention to be in the form of a petition)
 
 
 [19]
 2 Standard Pennsylvania Practice ch. 9, § 11 (Revised 1956)
 
 
 [20]
 See McClaskey v. Harbison-Walker Refractories Co., 138 F.2d 493, 495-96 (3d Cir. 1943) (Biggs, J.); Commonwealth v. Ryan, 459 Pa. 148, 155, 327 A.2d 351, 354 (1974); Lurie v. Republican Alliance, 412 Pa. 61, 63, 192 A.2d 367, 369 (1963)
 
 
 [21]
 Rule 1502 provides: "The equity side of the court shall always be open."
 
 
 [22]
 Rule 140(G)(3) exempted from the fifteen-day response period "(a)ny petition of an emergency nature in which a fifteen (15) day notice is practically impossible or would defeat the purpose of the emergency petition ...."
 
 
 [23]
 Rule 140(H) states:
 All requests for preliminary relief, such as writs of seizure, temporary restraining orders, etc., shall be first filed with the Prothonotary and then shall be filed, accompanied by a Rule, in the Motion Court for disposition by the Motion Judge. These matters shall be exempt from all other requirements of the Motion Rule.
 
 
 [24]
 Rule 248 states that "(t)he time prescribed by any rule of civil procedure for the doing of any act may be extended or shortened by written agreement of the parties or by order of court."
 
 
 [25]
 Indeed, variance from county to county is not unusual in Pennsylvania practice, as Professor Levin noted with respect to levy. 3 Goodrich-Amram § 3140(a)-2, at 310; see 9 Goodrich-Amram 2d § 3140(a):1.1, at 457-58
 
 
 [26]
 The relevant portions of the exemption sections, with headings, are:
 § 8123. General monetary exemption
 (a) General rule.-In addition to any other property specifically exempted by this subchapter, property of the judgment debtor to the value of $300, including bank notes, money, securities, real property, judgments or other indebtedness due to the judgment debtor, shall be exempt from attachment or execution on a judgment. Within such time as may be prescribed by general rules the judgment debtor may claim the exemption in kind and may designate the specific items of property to which the exemption provided by this section shall be applicable, unless the designated property is not capable of appropriate division, or the judgment debtor may claim the exemption in cash out of the proceeds of the sale.
 § 8124. Exemption of particular property ....
 (b) Retirement funds and accounts.-The following money or other property of the judgment debtor shall be exempt from attachment or execution on a judgment:
 (1) Certain amounts payable under the Public School Employees' Retirement Code as provided by 24 Pa.C.S. § 8533 ....
 (2) Certain amounts payable under the State Employees' Retirement Code as provided by 71 Pa.C.S. § 5953 ....
 (3) The retirement allowance provided for in ... (53 P.S. § 761-64).
 (4) Compensation or pension provided for in ... (53 P.S. § 13341-46).
 (5) Compensation or pension provided for in ... (53 P.S. § 23561-75.2).
 (6) The retirement allowance, contributions and returned contributions under ... the "Pennsylvania Municipal Retirement Law" (53 P.S. §§ 881.101 to 881.501).
 (7) Any pension or annuity, whether by way of a gratuity or otherwise, granted or paid by any private corporation or employer to a retired employee under a plan or contract which provides that the pension or annuity shall not be assignable.
 (8) Any retirement or annuity fund of any self-employed person (to the extent of payments thereto made while solvent, but not exceeding the amount actually excluded or deducted as retirement funding for Federal income tax purposes) and the appreciation thereon, the income therefrom and the benefits or annuity payable thereunder.
 (c) Insurance proceeds.-The following property or other rights of the judgment debtor shall be exempt from attachment or execution on a judgment:
 (1) Certain amounts paid, provided or rendered by a fraternal benefit society as provided by 40 Pa.C.S. § 6531....
 (2) Claims and compensation payments under ... "The Pennsylvania Workmen's Compensation Law," (77 P.S. § 1-1601.1), except as otherwise provided in the act.
 (3) Any policy or contract of insurance or annuity issued to a solvent insured who is the beneficiary thereof, except any part thereof exceeding an income or return of $100 per month.
 (4) Any amount of proceeds retained by the insurer at maturity or otherwise under the terms of an annuity or policy of life insurance if the policy or a supplemental agreement provides that such proceeds and the income therefrom shall not be assignable.
 (5) Any policy of group insurance or the proceeds thereof.
 (6) The net amount payable under any annuity contract or policy of life insurance made for the benefit of or assigned to the spouse, children or dependent relative of the insured, whether or not the right to change the named beneficiary is reserved by or permitted to the insured. The preceding sentence shall not be applicable to the extent the judgment debtor is such spouse, child or other relative.
 (7) The net amount payable under any accident or disability insurance.
 § 8127. Personal earnings exempt from process
 (a) General rule.-The wages, salaries and commissions of individuals shall while in the hands of the employer be exempt from any attachment, execution or other process except upon an action or proceeding for support or for board for four weeks or less.
 
 
 [27]
 For example, dividends on insurance policies, if not applied against the policy premium, are attachable. Martin v. Balis, 18 Pa.D. & C. 187, 190 (Phila.Cty.1932). The wages and salary exemption has been broadly construed to include legal fees, Bell v. Roberts, 150 Pa.Super. 469, 477, 28 A.2d 715, 718 (1942); Bair v. Neugeon, 40 Pa.D. & C. 245, 252 (De.Cty.1940), architect's fees, Central Trust Co. v. Rieger, 25 Pa.Dist. 1074, 1076 (Allegheny Co. 1916), commissions of an executor, Adams Appeal, 47 Pa. 94, 95 (1864), and even the wages of a chorister in a church, Catlin v. Ensign, 29 Pa. 264, 265 (1857)
 
 
 [28]
 The applicable state statutes are included in the appendix attached to this opinion. Only one state, Oregon, requires that the debtor receive a discrete list of exemptions after her assets are garnished, and that requirement is barely a year old. Oklahoma requires a less complete list. Virginia and Wisconsin require notice to the debtor of exemptions from wage garnishment, which is not analogous to garnishment of bank accounts. When wages are garnished in the hands of the employer, the source of the wages is easily ascertainable. Deposits in a bank account, however, may have originated from any source, and the range of relevant exemptions is almost infinite
 
 
 [29]
 This concept is expressed in terms of individual, social and public interests. The extent of procedural protection is said to require consideration of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of the interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)
 
 
 [30]
 See Aldisert, On Being Civil to Younger, 11 Conn.L.Rev. 181 (1979); Aldisert, Judicial Expansion of Federal Jurisdiction: A Federal Judge's Thoughts on Section 1983, Comity and the Federal Caseload, 1973 Ariz.St.L.J. 557
 
 
 [31]
 In re Winship, 397 U.S. 358, 377, 90 S.Ct. 1068, 1079, 25 L.Ed.2d 368 (1970) (Black, J., dissenting)